310 F.3d 1143
 Nga BUI, as Personal Representative of the Estate of Hung M. Duong, Deceased, Plaintiff-Appellant,
v.
AMERICAN TELEPHONE & TELEGRAPH COMPANY INCORPORATED, a New York corporation; Lucent Technologies, Inc., a Delaware corporation; International SOS Assistance, Inc., a Delaware corporation, Defendants-Appellees.
 No. 01-35509.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted September 10, 2002.
 Filed November 15, 2002.
 
 COPYRIGHT MATERIAL OMITTED Baolin Chen, Portland, OR, for the appellant.
 R. Daniel Lindahl and Lori K. DeDobbelaere, Dunn, Carney, Allen, Higgins & Tongue LLP, Portland, OR, and Jacqueline Wilson and John Skelton, Litigation Solutions Law Group LLP, Redwood City, CA, for the appellees.
 Appeal from the United States District Court for the District of Oregon; Dennis James Hubel, Magistrate Judge, Presiding. D.C. No. CV-99-01127-HU.
 Before: GOODWIN, T.G. NELSON, and GRABER, Circuit Judges.
 T.G. NELSON, Circuit Judge.
 
 INTRODUCTION
 
 1
 We reverse and remand in part, and affirm in part, the district court's grant of summary judgment in favor of defendants, American Telephone and Telegraph Company Incorporated ("AT & T"), Lucent Technologies, Inc. (together, "AT & T/Lucent"), and International SOS Assistance, Inc. ("SOS"). The district court granted summary judgment on the ground that the Employee Retirement Income Security Act of 1974[1] ("ERISA") preempted all of plaintiff's claims. We conclude that ERISA preempts only those claims based upon administrative decisions, not those claims asserting medical malpractice. Thus, we reverse and remand on the claims against Lucent and SOS that allege malpractice and do not require interpretation of the ERISA plan. We affirm on the claims against AT & T and Lucent that involve ERISA administrative decisions or otherwise require construing the ERISA plan.
 
 FACTS
 
 2
 Plaintiff, Nga Bui, brings this action as the representative of her deceased husband's estate. Her husband, Hung M. Duong, died at Erfan Hospital in Jeddah, Saudi Arabia, on August 10, 1996. Immediately preceding his death, Duong underwent two unsuccessful operations, one of which had never previously been performed at Erfan Hospital, and suffered two myocardial infarctions.
 
 
 3
 In the week before his death, Duong knew his situation was critical. His physician had told him that he needed to undergo surgery, either in Saudi Arabia or elsewhere, in less than a week. Duong attempted to determine whether he should remain in Saudi Arabia for surgery or whether he should leave the country to seek treatment.
 
 
 4
 Duong consulted SOS, a company with which his employer, AT & T/Lucent, had contracted to provide emergency medical advice and evacuation services. SOS personnel told Duong that evacuation presented a greater risk than remaining in Saudi Arabia for treatment, especially given the quality of the facilities and services available at Erfan Hospital. Thus, SOS advised Duong to remain in Saudi Arabia.
 
 
 5
 Duong also consulted with a physician employed by AT & T/Lucent, Dr. Waugh. Waugh seconded SOS's recommendation, advising Duong to remain in Saudi Arabia as well.
 
 
 6
 At some point, a Lucent employee told Duong that the return of his passport would take one to two weeks.[2] The complaint alleges that Lucent never informed Duong that the return could have been expedited in an emergency.
 
 
 7
 Bui asserts that, after offering the above advice and information, SOS and Lucent failed to follow up on Duong's requests for additional information and further advice, as well as his requests for evacuation. When Duong got no response from SOS and Lucent regarding his additional questions and requests, and the date Duong's doctor had given him for surgery was at hand, Duong checked into the Erfan Hospital and submitted to treatment there, after which he died.
 
 
 8
 Bui filed suit in federal district court,[3] alleging that SOS's recommendation that Duong remain in Saudi Arabia was negligent and that, through its advice and subsequent failure to respond to Duong, the company wrongfully caused Duong's death. Bui also alleges that AT & T/Lucent negligently caused Duong's death by advising him to follow SOS's recommendations, by failing to inform him that it could return his passport promptly in an emergency, by failing to respond to his request for evacuation, and by choosing SOS as a service provider. Bui also asserts breach of contract claims against AT & T/ Lucent.
 
 
 9
 The district court granted summary judgment to defendants on the ground that 29 U.S.C. § 1144, ERISA's preemption clause, preempts all of Bui's claims. We conclude that summary judgment was proper as to the breach of contract claim against AT & T, the breach of contract claims against Lucent, and the negligence claim against Lucent based on its retention of SOS. Those claims rest on administrative decisions made in the course of administering an ERISA plan. The record does not support summary judgment as to the remaining negligence claims against Lucent, however. The claim against Lucent for failing to inform Duong that he could receive his passport in an emergency appears not to relate to ERISA at all. ERISA also does not preempt the claim for negligent medical advice and for negligent delay to the extent that the delay was based on actions taken during the course of medical treatment or consultation, rather than ERISA administration. Finally, the record does not support summary judgment on preemption grounds as to any of the claims against SOS.
 
 DISCUSSION
 I. ERISA Preemption and Medical Malpractice
 
 10
 ERISA contains a broadly worded preemption clause.[4] Section 1144 states that ERISA preempts "any and all State laws insofar as they may now or hereafter relate to any employee benefit plan" governed by ERISA.[5] Application of this broad text has evolved from a plain language interpretation, in which ERISA would have preempted nearly everything,[6] to a more pragmatic interpretation, in which courts seek to preserve the goals of Congress when it passed ERISA, while maintaining state control in traditional fields of state regulation.[7]
 
 
 11
 Medical malpractice is one traditional field of state regulation that several circuits have concluded Congress did not intend to preempt. We join the Third, Fifth, and Tenth Circuits[8] in holding that ERISA's preemption clause, 29 U.S.C. § 1144, does not preempt actions involving allegations of negligence in the provision of medical care, even if the patient procures the care through an ERISA plan. Our decision follows a related decision, Roach v. Mail Handlers Benefit Plan,[9] in which we held that the federal analogue to ERISA, the Federal Employees Health Benefits Act of 1958,[10] does not preempt medical malpractice claims.
 
 
 12
 In accord with our sister circuits and our decision in Roach, we look to the behavior underlying the allegations in the complaint to determine whether ERISA preempts a plaintiff's claims.[11] If a claim alleges a denial of benefits, ERISA preempts it. A denial of benefits involves an administrative decision regarding coverage. Under any of the tests for determining ERISA preemption applied by this court, it is clear that ERISA preempts suits predicated on administrative decisions.[12] Subjecting such decisions to an individual state's laws would subvert the intent of Congress to allow for the uniform administration of ERISA benefits in three ways: by requiring administrators to follow many state laws instead of one federal law; by interfering with the relationship between ERISA administrators and beneficiaries; and by providing an alternative enforcement mechanism for beneficiaries to obtain benefits.[13] Thus, ERISA precludes state law claims predicated on the denial of benefits.
 
 
 13
 If a claim alleges medical malpractice, however, we conclude for several reasons that ERISA does not preempt it and that state law governs. First, under any of the tests applied by this court, it is clear that state medical malpractice standards should not be preempted. They do not mandate employee benefit structures or their administration, do not preclude uniform administrative practices, and do not provide alternative enforcement mechanisms for employees to obtain ERISA benefits.[14] In addition, they are state standards of general application that do not depend upon ERISA.[15] Finally, they will not affect the relationships between principal ERISA participants when acting in their roles as principal ERISA participants.[16] In short, they do not impinge upon Congress's stated goal for ERISA: to ensure uniform administrative enforcement.[17] And medical malpractice standards further another goal of Congress in passing ERISA: to protect beneficiaries.[18]
 
 
 14
 Second, if ERISA did preempt medical malpractice claims, the results would be absurd. Physicians would be subject to state standards when treating non-ERISA patients, and to another, as-yet-undefined (and possibly undefinable)[19] standard when treating ERISA patients. Although advantages accrue when ERISA administrators, who often administer plans in many different states, are subject to uniform, nationwide standards; no similar advantages exist when physicians and other care providers are subject to federal standards as well as to state standards, depending on the patient's source of payment. Absent some evidence of clear congressional intent to preempt the long-standing system for determining standards of care through state medical malpractice claims and to replace it with a new, federal system, we decline to conclude that ERISA preempts state medical malpractice standards.[20]
 
 
 15
 Accordingly, we conclude that state law standards for medical malpractice apply equally to service providers treating ERISA and non-ERISA beneficiaries. If a claim involves a medical decision made in the course of treatment, ERISA does not preempt it; but if a claim involves an administrative decision made in the course of administering an ERISA plan, ERISA preempts it. We now apply this framework to the particular claims at issue in this case.
 
 II. Bui's Claims
 A. Claims against SOS
 
 16
 Bui alleges that SOS caused Duong's death by (1) negligently advising him to stay in Saudi Arabia; (2) failing to respond to his request for evacuation; and (3) failing to evacuate him. For the following reasons, we conclude that summary judgment on ERISA preemption grounds was inappropriate on all those claims.[21]
 
 
 17
 The first claim amounts to an assertion of negligence in the provision of a benefit by a direct service provider. Bui alleges that Duong received the benefit promised by his ERISA plan, medical advice, but that the advice was negligent. This claim closely resembles the claim addressed in Roach.[22] In that case, the ERISA beneficiary had received an allegedly negligent recommendation from an advice nurse and did not go to a doctor until her broken ankle was permanently damaged.[23] Thus, the beneficiary in Roach received the benefit promised by her ERISA plan — advice from the advice nurse — but the benefit was negligently provided. Similarly, in this case, Duong received the benefit of medical advice that he was promised under his ERISA plan — SOS advised him to remain in Saudi Arabia for treatment. Bui simply alleges that SOS's advice was negligent. Thus, Bui's claim, like the claim of the plaintiff in Roach, is for the negligent provision of a benefit.
 
 
 18
 Because the benefit at issue in Roach was promised by an ERISA plan, some reference to the plan was necessary. However, we concluded that the claim alleged medical negligence at its root, and ERISA thus did not preempt it.[24] Similarly, in this case, Duong contacted SOS because it was the service provider designated by his ERISA benefits plan, and Bui's claim against SOS thus references — in a limited way — the plan. The claim otherwise does not involve the plan, however. At its root, the claim alleges negligence by SOS. Thus, just as the claim in Roach was not preempted, so, too, the claim in this case is not. Mere reference to an ERISA plan does not lead to preemption.[25]
 
 
 19
 The second claim against SOS, that the company failed to respond to Duong's request for evacuation, involves a slightly more complicated analysis. ERISA preempts suits based on administrative delay, such as the delay that occurs when an administrator processes a request for coverage.[26] Thus, if the delay in responding to Duong was administrative, ERISA preempts the claim. SOS argues that it acted similarly to an ERISA administrator, that Bui's claim is thus based on administrative delay, and that ERISA preempts the claim. SOS points to nothing in the record to show that it acted as, or even like, an administrator, however, and we find no such evidence on our review of the record. Indeed, two pieces of evidence suggest that SOS was purely a service provider, not an ERISA administrator.
 
 
 20
 First, one of the physicians employed by SOS explained that SOS would have benefitted from evacuating Duong, because evacuation would have resulted in additional fees being paid to the company, but that SOS based its decision on the patient's needs. The first part of the physician's statement suggests that the interests of SOS were diametrically opposed to those of an ERISA administrator. An administrator bears a fiduciary responsibility to the plan as a whole to pay only covered costs and would not benefit from increased treatment costs. The second part of his statement suggests that SOS's duty was to determine what was in Duong's best interests as a patient — in other words, to make treatment recommendations, not coverage decisions.
 
 
 21
 Second, an agreement between SOS and AT & T/Lucent states that, if SOS could not contact plan administrators, SOS could evacuate a beneficiary without receiving prior approval from Lucent. Although this contractual provision might be read to offer a modicum of support for the argument that SOS could act in lieu of an administrator in these precise circumstances, its negative implication is that SOS did not act as an administrator in most circumstances. Moreover, there is no evidence that SOS had to act in lieu of an administrator in this case, because no one has suggested that SOS could not contact Lucent.[27]
 
 
 22
 Thus, the evidence in the record, though limited, suggests that SOS acted purely as a service provider, not an administrator. Accordingly, its delay in responding to Duong appears not to have been administrative in nature. If that indeed is the case, and the delay was the result of simple negligence on the part of a direct service provider, ERISA does not preempt this claim. Because a genuine issue of material fact exists regarding whether SOS acted as a pure service provider, summary judgment on preemption grounds for Bui's second claim against SOS was inappropriate. ERISA does not preempt claims of negligence in the provision of services, including negligent delay.
 
 
 23
 The insufficient development of the record also precludes summary judgment on Bui's third claim against SOS, that it negligently failed to evacuate Duong. If the failure to evacuate resulted from an administrative decision, ERISA would preempt this claim. But again, we find no evidence in the record suggesting that the failure was in any way administrative. If SOS was a pure service provider and the failure to evacuate resulted from negligent delay or negligent medical evaluation, ERISA would not preempt this claim. Accordingly, summary judgment on preemption grounds is inappropriate.
 
 B. Claims against AT&T
 
 24
 Bui alleges only one claim against AT&T, for breach of contract. AT&T's role in the facts underlying this case ended when Lucent became Duong's employer and assumed the ERISA plan.[28] Duong's illness occurred after Lucent spun off from AT&T. Thus, AT&T's only role was establishing the plan and selecting SOS. Such activities are purely administrative, and ERISA preempts suits based upon them.[29] If such claims were not preempted, plan administrators would be held to a multiplicity of state standards when they decide how to structure ERISA plans and select service providers for those plans.[30] That is precisely the situation Congress sought to avoid when it passed ERISA and prescribed the broad preemption clause.[31] The district court correctly held that ERISA preempts the claim against AT&T.
 
 C. Claims against Lucent
 
 25
 Bui's claims against Lucent are more numerous. Bui alleges breach of contract for failure to provide adequate medical evaluation benefits and for failure to provide the evacuation benefit promised by the ERISA plan. In addition, Bui alleges that Lucent committed various negligent acts that led to Duong's wrongful death, including: Lucent's retention of SOS as a service provider; Lucent's failure to advise Duong that the return of his passport could be expedited in an emergency; Lucent's advice, through Dr. Waugh, that Duong should heed SOS's recommendation and stay in Saudi Arabia; and Lucent's delay in responding to Duong's request for further advice and for evacuation.
 
 
 26
 Summary judgment was properly granted as to the contract claims and as to the negligent retention claim. However, summary judgment was inappropriate on the three remaining claims: for negligence based on Lucent's failure to reveal the expedited passport procedure, for negligent provision of medical advice, and for negligent delay. We will address each claim in turn.
 
 
 27
 ERISA preempts Bui's contract claims. These claims do not merely reference the ERISA plan,[32] they require its construction because the contract allegedly breached is the ERISA plan itself. Accordingly, ERISA preempts the contract claims.[33]
 
 
 28
 ERISA also preempts the claim for negligent retention of SOS as a service provider. Like the selection of providers, the retention of providers is a necessary part of the administration of an ERISA plan. Thus, for the same reasons ERISA precludes suit against AT&T for its initial decision to select SOS, ERISA shields Lucent's decision to retain SOS from the reach of state standards.[34]
 
 
 29
 We cannot affirm the grant of summary judgment on preemption grounds as to Bui's last three claims against Lucent. The claim against Lucent for failing to inform Duong that his passport could be returned quickly in the event of an emergency appears to have nothing to do with ERISA. The emergency return of an employee's passport is not a benefit under an ERISA plan and nothing in the record links Lucent's failure to inform Duong that his passport could be returned to ERISA benefits. Thus, ERISA does not preempt this claim.
 
 
 30
 Genuine issues of material fact exist regarding Bui's last two claims against Lucent for negligent medical advice and for delay in responding to Duong. Although ERISA preempts suits based on negligent administrative decisions, including negligent delays in such decisions,[35] it is unclear from the current record whether Lucent was acting as a direct service provider or an administrator when it engaged in the behavior on which Bui bases her claims. Bui has pointed to evidence in the record that raises substantial factual questions regarding Duong's relationship with Waugh, who was unquestionably Lucent's agent and employee. Bui filed an affidavit stating that Waugh gave Duong medical advice regarding whether to stay in Saudi Arabia and that Duong asked Waugh for further advice and evaluation. If Waugh and Duong had a doctor-patient relationship, then Bui may sue Lucent for any medical malpractice its agent committed.[36] Bui's claims may include negligent medical advice and negligent delay in responding to Duong's medical questions, if that delay was made in the course of medically evaluating or treating Duong, rather than in the course of administering the ERISA plan.
 
 
 31
 Lucent has countered Bui's evidence that Waugh gave Duong medical advice with nothing save blanket statements that the evidence is unconvincing and that Lucent was an administrator. We may not, on summary judgment, weigh evidence.[37] The fact that Lucent may have acted as an administrator at other times is irrelevant. What matters is the hat it was wearing during the time it committed the acts of which Bui complains.[38] Bui has shown that a genuine issue of material fact exists regarding whether Lucent was wearing the hat of an administrator or the hat of a service provider when Waugh and Duong conferred and when Waugh did not respond to Duong's request for further medical advice and evaluation. Accordingly, summary judgment is inappropriate on Bui's claims against Lucent for negligent medical advice and for negligent delay.
 
 CONCLUSION
 
 32
 ERISA does not preempt claims of medical malpractice against medical service providers for decisions made in the course of treatment or, in this case, evaluation. That is true even if those medical service providers also serve, at other times, as administrators. Accordingly, summary judgment on preemption grounds may not be granted as to Bui's claims against SOS and as to her claims against Lucent for negligence based on Lucent's failure to reveal the expedited passport procedure and for negligence and delay in the provision of medical advice, at least on the record as it currently stands. We reverse and remand as to those claims. Summary judgment on preemption grounds was appropriately granted as to the remaining claims against Lucent and as to all the claims against AT&T. We affirm as to those claims.
 
 
 33
 REVERSED AND REMANDED IN PART; AFFIRMED IN PART.
 
 
 34
 No costs allowed.
 
 
 
 Notes:
 
 
 [1]
 29 U.S.C. §§ 1001-1461 (2000)
 
 
 [2]
 Apparently, AT & T/Lucent's employees in Saudi Arabia surrendered their passports after their entry into the country
 
 
 [3]
 Bui asserted jurisdiction on diversity grounds pursuant to 28 U.S.C. § 1332. Bui is a citizen of Oregon. AT & T is a New York corporation. Lucent and SOS are Delaware corporations. The amount in controversy exceeds the requirements of § 1332
 
 
 [4]
 See, e.g., PM Group Life Ins. Co. v. W. Growers Assurance Trust, 953 F.2d 543, 545 (9th Cir.1992) (characterizing ERISA's preemption clause as "one of the broadest ... ever enacted by Congress") (internal quotation marks and citation omitted).
 
 
 [5]
 29 U.S.C. § 1144(a)
 
 
 [6]
 See Cal. Div. of Labor Standards Enforcement v. Dillingham Constr., N.A., Inc., 519 U.S. 316, 330-31, 117 S.Ct. 832, 136 L.Ed.2d 791 (1997); Spain v. Aetna Life Ins. Co., 11 F.3d 129, 131 (9th Cir.1993) (per curiam).
 
 
 [7]
 See Rutledge v. Seyfarth, Shaw, Fairweather & Geraldson, 201 F.3d 1212, 1217-18 (describing various tests developed to interpret the preemption clause after the Supreme Court's decision in N.Y. State Conf. of Blue Cross & Blue Shield Plans v. Travelers Ins. Co., 514 U.S. 645, 115 S.Ct. 1671, 131 L.Ed.2d 695 (1995), which made it clear that the goal of such interpretations was to "fulfill[] the statutory mandate of broad preemption without intruding upon state laws beyond the intention of Congress and the objectives of ERISA"), as amended by 208 F.3d 1170 (9th Cir.), cert. denied, 531 U.S. 992, 121 S.Ct. 482, 148 L.Ed.2d 456 (2000); Roach v. Mail Handlers Benefit Plan, 298 F.3d 847, 849-50 (9th Cir.2002) (stating that "`relates to' must be read in the context of the presumption that in fields of traditional state regulation `the historic police powers of the States [are] not to be superseded by [a] Federal Act unless that was the clear and manifest purpose of Congress'") (quoting Travelers, 514 U.S. at 655, 115 S.Ct. 1671) (alteration in original).
 
 
 [8]
 See Dukes v. U.S. Healthcare, Inc., 57 F.3d 350, 356-58 (3d Cir.1995); Corporate Health Ins., Inc. v. Tex. Dep't of Ins., 215 F.3d 526, 534-35 (5th Cir.2000), vacated on other grounds sub nom. Montemayor v. Corporate Health Ins., ___ U.S. ___, 122 S.Ct. 2617, 153 L.Ed.2d 800 (2002); Pacificare of Okla., Inc. v. Burrage, 59 F.3d 151, 153-55 (10th Cir. 1995).
 
 
 [9]
 298 F.3d 847 (9th Cir.2002)
 
 
 [10]
 5 U.S.C. §§ 8901-8914 (2002)
 
 
 [11]
 See Roach, 298 F.3d at 850 (holding that "denial of benefit claims are preempted ... but malpractice claims are not"); Corporate Health, 215 F.3d at 534 (stating that, when wearing "their hats as medical care providers," managed care providers are subject to state law claims for malpractice); Pacificare, 59 F.3d at 153-55 (drawing a distinction between disputes regarding the quantity of health benefits, which is covered by federal law, and the quality of health benefits, which is covered by state law); Dukes, 57 F.3d at 356-57 (same).
 
 
 [12]
 See Rutledge, 201 F.3d at 1217-19 (describing tests for preemption set forth in Ariz. State Carpenters Pension Trust Fund v. Citibank, 125 F.3d 715, 722 (9th Cir.1997); Geweke Ford v. St. Joseph's Omni Preferred Care Inc., 130 F.3d 1355, 1358 (9th Cir.1997); and Operating Eng'rs Health & Welfare Trust Fund v. JWJ Contracting Co., 135 F.3d 671 (1998)).
 
 
 [13]
 See supra note 12.
 
 
 [14]
 Id.
 
 
 [15]
 Id.
 
 
 [16]
 We note that an entity that both provides direct medical services and acts as an administrator may be held liable under state law for its actions as a service provider, though not for its actions as an administratorSee Roach, 298 F.3d at 851 (stating that an HMO that hired a doctor who provided allegedly negligent medical care could be held liable under state medical malpractice standards); cf. Bast v. Prudential Ins. Co. of Am., 150 F.3d 1003, 1008 (9th Cir.1998) (holding that ERISA preempted suit against insurance company despite ERISA's exemption of state laws governing insurance from the preemption clause, because company was acting as an ERISA administrator, not an insurer, in making the decisions at issue).
 
 
 [17]
 See Rutledge, 201 F.3d at 1216-17.
 
 
 [18]
 Id.
 
 
 [19]
 The current statutory scheme provides no mechanism by which federal malpractice standards could be developed. ERISA's exclusive civil enforcement provision, § 1132, does not provide for malpractice claims against medical personnel. Thus, if § 1144 preempts state claims for medical malpractice, and § 1132 provides no mechanism for developing federal standards, ERISA beneficiaries would seem to have no recourse. Federal standards could not be developed through litigation, state standards would not apply, and physicians treating ERISA-covered patients would be subject to no standards whatsoever, at least until Congress acted. This result would certainly run counter to one of Congress's acknowledged goals in passing ERISA — the protection of beneficiaries — while not furthering Congress's goal of uniform administrative enforcement in any waySee Rutledge, 201 F.3d at 1216-17.
 
 
 [20]
 See Dillingham, 519 U.S. at 330-31, 117 S.Ct. 832 (applying a presumption that Congress did not intend ERISA to preempt areas of "traditional state regulation" that are "quite remote from the areas with which ERISA is expressly concerned — reporting, disclosure, fiduciary responsibility, and the like") (internal quotation marks and citation omitted).
 
 
 [21]
 We review grants of summary judgmentde novo. Oliver v. Keller, 289 F.3d 623, 626 (9th Cir.2002).
 
 
 [22]
 Roach, 298 F.3d 847.
 
 
 [23]
 Id. at 851.
 
 
 [24]
 Id.
 
 
 [25]
 Id.
 
 
 [26]
 See Bast, 150 F.3d at 1006, 1008 (holding that ERISA preempted claim for wrongful death resulting from long administrative delay in processing a request for coverage because delay was the result of the administrative process used to determine coverage).
 
 
 [27]
 We note that, even if SOS had pointed to evidence establishing that it could not contact Lucent, it would still be an open question whether ERISA would entirely preempt the claim against the company. The agreement suggests that, even in cases in which Lucent could not be reached, the decision to evacuate would turn directly on SOS's determination of medical necessity. SOS thus might well be held liable for the determination of medical necessity that informed the decision not to evacuate, even if ERISA preempted the actual decision not to evacuateCf. Roach, 298 F.3d at 851 n. 3 (suggesting that when eligibility turned on a medical diagnosis, a decision regarding coverage could "ultimately boil[] down to a malpractice claim").
 
 
 [28]
 On appeal, Bui does not challenge the district court's finding that Lucent assumed the ERISA plan when it spun off from AT&T
 
 
 [29]
 See, e.g., Greany v. W. Farm Bureau Life Ins. Co., 973 F.2d 812, 818 (9th Cir.1992) (holding preempted a plan's failure to procure the proper coverage and services).
 
 
 [30]
 See Rutledge, 201 F.3d at 1217 (stating that ERISA preempts "state laws that bind employers or plan administrators to particular choices or preclude uniform administrative practice") (internal quotation marks and citation omitted).
 
 
 [31]
 See Travelers, 514 U.S. at 657, 115 S.Ct. 1671 ("The basic thrust of the pre-emption clause [is] to avoid a multiplicity of regulation in order to permit the nationally uniform administration of employee benefit plans.").
 
 
 [32]
 See Roach, 298 F.3d at 851 (holding that mere reference to an ERISA plan does not result in preemption).
 
 
 [33]
 See Rutledge, 201 F.3d at 1218 (noting that ERISA preempts state laws that "depend upon ERISA").
 
 
 [34]
 See supra Part II.B.
 
 
 [35]
 See, e.g., Bast, 150 F.3d at 1006, 1008.
 
 
 [36]
 See Roach, 298 F.3d at 850-51; Pacificare, 59 F.3d at 155 ("When an [entity] elects to directly provide medical services or leads a participant to reasonably believe that it has, rather than simply arranging and paying for treatment, a vicarious liability medical practice claim based on substandard treatment by an agent ... is not preempted.") (quoting Haas v. Group Health Plan, Inc., 875 F.Supp. 544, 548 (S.D.Ill.1994)).
 
 
 [37]
 Balint v. Carson City, 180 F.3d 1047, 1054 (9th Cir.1999) (en banc).
 
 
 [38]
 See, e.g., Corporate Health, 215 F.3d at 534 (stating that, when wearing "their hats as medical care providers," managed care providers are subject to state law claims for malpractice).