MARGERITA CERVANTES AND JAIME RODRIGUEZ, APPEL-
LANTS, *v.* HEALTH PLAN OF NEVADA, INC.; SIERRA
HEALTH SERVICES, INC.; SIERRA HEALTH AND LIFE
INSURANCE COMPANY, INC.; SIERRA HEALTH-CARE
OPTIONS, INC.; AND PRIME HEALTH, RESPONDENTS.

No. 56166

October 27, 2011                    263 P.3d 261

[Rehearing denied January 23, 2012]

*Matthew L. Sharp Ltd.* and *Matthew L. Sharp*, Reno; *Friedman Rubin* and *William S. Cummings*, Anchorage, Alaska, for Appellants.

*Jones Vargas* and *Constance L. Akridge*, Las Vegas; *Bryan Cave LLP* and *J. Alex Grimsley, Lawrence G. Scarborough*, and *Meridyth M. Andresen*, Phoenix, Arizona, for Respondents.

Before the Court EN BANC.

# OPINION

By the Court, DOUGLAS, J.:

Appellant Margerita Cervantes allegedly contracted hepatitis C as a result of treatments she received at the Endoscopy Center of Southern Nevada (ECSN). She obtained treatment at ECSN as part of the health-care benefits she received through her union, the Hotel Employees and Restaurant Employees International Union Welfare Fund (Culinary Union). The Culinary Union operated a self-funded Employee Retirement Income Security Act (ERISA) health-care plan and retained respondents Health Plan of Nevada, Inc.; Sierra Health Services, Inc.; Sierra Health and Life Insurance Company, Inc.; Sierra Health-Care Options, Inc.; and Prime Health (collectively, HPN) as its agents to assist in establishing a network of the plan's chosen medical providers.

Cervantes filed a lawsuit alleging that HPN is responsible for her injuries because it failed to ensure the quality of care provided by ECSN and referred her to a blatantly unsafe medical provider. In response, HPN argued, among other things, that Cervantes' claims were preempted by ERISA § 514.

The district court, having considered the parties' contentions, concluded that Cervantes' claims were preempted by ERISA § 514(a). In this appeal, we consider whether ERISA § 514 precludes state law claims of negligence and negligence per se against a managed care organization[1] (MCO) contracted by an ERISA plan to facilitate the development of the ERISA plan's network of health-care providers. We conclude that such claims are precluded by ERISA § 514, and therefore, we affirm the district court's grant of summary judgment.[2]

---

[1]NRS 695G.050 defines a "managed care organization" as "any insurer or organization authorized pursuant to this title to conduct business in this State that provides or arranges for the provision of health-care services through managed care."

[2]Appellants also argue that the district court abused its discretion in refusing to allow them to conduct NRCP 56(f) discovery and in concluding that HPN owed them no duty of care. Because we conclude that appellants' claims are preempted by ERISA § 514, we do not reach the other issues presented.

Moreover, although appellants now contend that they should have been given an opportunity to conduct additional discovery on the relationship between HPN and the Culinary Union, they never advanced this contention before the district court. The failure to raise an argument in the district court proceedings precludes a party from presenting the argument on appeal. *Mason v. Cuisenaire*, 122 Nev. 43, 48, 128 P.3d 446, 449 (2006). Therefore, appellants waived this issue.

## FACTS AND PROCEDURAL HISTORY

Cervantes received health-care benefits through the Culinary Union's self-funded plan, which engaged HPN to assist in establishing a network of the plan's chosen medical providers. Specifically, the Culinary Union contracted with Sierra Health-Care Options to be the network manager for the Plan's provider network. The President of Sierra Health-Care Options explained in an affidavit that the contract provided that the Culinary Union "would select certain outpatient providers with whom it wanted to contract and [HPN] would negotiate contracts with those providers. Thereafter, Prime Health would sign the contract on behalf of the [Culinary Union]."

In 2007, Cervantes received treatment at ECSN and allegedly contracted hepatitis C as a result of her treatment there. After she was diagnosed with hepatitis C, Cervantes commenced an action against HPN, asserting claims for negligence and negligence per se. Her husband, appellant Jaime Rodriguez, asserted a claim for loss of consortium. Cervantes claimed that HPN breached a duty of care to her because it failed to maintain a quality assurance program as required by NRS Chapter 695G and accompanying regulations, and they were negligent in referring her to an unsafe medical provider.[3]

In its answer, HPN asserted a number of affirmative defenses and subsequently sought summary judgment from the district court, arguing, among other things, that Cervantes' claims were preempted by the relevant provisions of ERISA, specifically, §§ 502(a) and 514(a). 29 U.S.C. §§ 1132(a), 1144(a) (2006). Cervantes opposed the motion and sought a continuance to obtain discovery to respond to the motion.

The district court denied Cervantes' request for NRCP 56(f) discovery and granted HPN's motion for summary judgment. In so doing, the district court determined, among other things, that appellants' claims were preempted by ERISA § 514(a). Cervantes and Rodriguez appealed.

## DISCUSSION

We review a district court's grant of summary judgment de novo. *Wood v. Safeway, Inc.*, 121 Nev. 724, 729, 121 P.3d 1026, 1029 (2005). Summary judgment is appropriate when no genuine issues of material fact remain and the moving party is entitled to judgment as a matter of law. *Id.* Furthermore, whether state law is

---

[3]*See* NRS Chapter 695G and NAC Chapter 695C for the relevant statutes and regulations governing MCOs.

preempted by a federal statute is a question of law that we also review de novo. *Nanopierce Tech. v. Depository Trust*, 123 Nev. 362, 370, 168 P.3d 73, 79 (2007).

Cervantes argues that the district court erred in concluding that ERISA § 514(a) preempted her negligence claim[4] because her claims are not related to the ERISA plan and NRS Chapter 695G and NAC Chapter 695C only have an incidental effect on the plan. Cervantes cites two federal district court cases, with fact patterns similar to the facts here, in which the federal courts concluded that ERISA § 514(a) preemption did not apply: *Insco v. Aetna Health & Life Insurance Co.*, 673 F. Supp. 2d 1180 (D. Nev. 2009), and *Sadler v. Health Plan of Nevada, Inc.*, 2:08-cv-00466-RLH-LRL (D. Nev. June 28, 2008). Both *Insco* and *Sadler* involved patients who sued an MCO after contracting a blood-borne disease after treatment at ECSN and who alleged that the MCO was negligent in directing them to ECSN for care.[5]

In resolving this matter, we first consider the scope of ERISA § 514(a)'s preemptive effect. Thereafter, we consider whether § 514(a) preempts the application of NRS Chapter 695G and accompanying regulations.

## Preemption under ERISA

The Employee Retirement Income Security Act, codified at 29 U.S.C. §§ 1001-1461, was enacted to " 'protect . . . the interests of participants in employee benefit plans and their beneficiaries,' " by setting out substantive regulatory requirements for employee benefit plans, and to " 'provid[e] for appropriate remedies, sanctions, and ready access to Federal courts.' " *Aetna Health Inc. v. Davila*, 542 U.S. 200, 208 (2004) (quoting 29 § U.S.C. 1001(b)). As part of its comprehensive pension reform, Congress provided

---

[4]Although Cervantes pleaded negligence and negligence per se in her complaint as separate causes of action, they are in reality only one cause of action. Negligence per se is only a method of establishing the duty and breach elements of a negligence claim. *See Black's Law Dictionary* 1135 (9th ed. 2009). Because Cervantes' general negligence and negligence per se theories are based on her claim that HPN failed to evaluate, audit, monitor, and supervise ECSN, whether they are preempted by ERISA necessarily stand or fall together. We therefore do not consider Cervantes' theories of negligence separately.

[5]Although *Insco* and *Sadler* involved similar questions, *Insco* is factually distinguishable because the ERISA plan had purchased insurance from the defendant for its member rather than establish its own network of providers. *Insco*, 673 F. Supp. 2d at 1183. Moreover, we are not persuaded by the reasoning in *Sadler* because no facts regarding the relationship between the plan and the defendant were provided, and it failed to distinguish between an entity acting as an HMO or MCO and an entity acting solely as an administrative agent.

for expansive preemption of otherwise applicable state laws so that regulation of employee benefit plans "is exclusively a federal concern." *Id.* (internal quotations omitted).

The preemptive effect of ERISA comes from §§ 502 and 514(a) of the Act. *Cleghorn v. Blue Shield of California*, 408 F.3d 1222, 1225 (9th Cir. 2005). Like the district court, we start—and necessarily end—our analysis with § 514(a).

### *Preemption under ERISA § 514(a)*

ERISA § 514(a) preempts all state laws that "relate to" any employee benefit plan; however, laws that regulate insurance, banking, or securities are exempted from this preemption. 29 U.S.C. § 1144 (2006) (exempting laws regulating insurance, banking, or securities from this preemption); *Cleghorn*, 408 F.3d at 1225. Section 514(a)'s sweeping "relate[d] to" language cannot be read with "uncritical literalism." *New York State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.*, 514 U.S. 645, 655-56 (1995). The United States Supreme Court noted that if the statute's "relate[d] to" language is taken to extend to the furthest reaches imaginable, Congress's words of limitation would hold no meaning. *Id.* at 655 (" '[r]eally, universally, relations stop nowhere' " (quoting H. James, *Roderick Hudson* xli (New York ed., World's Classics 1980))). Furthermore, the Court emphasized that the intent of Congress is the touchstone to preemption analysis and that, absent a clear and manifest intent of Congress, there is a presumption that federal laws do not preempt the application of state or local laws regulating matters that fall within the traditional police powers of the state, including health and safety matters.[6] *Id.* at 655, 661; *De Buono v. NYSA-ILA Medical and Clinical Services Fund*, 520 U.S. 806, 814 (1997).

---

[6]Cervantes also claims that this court has adopted the following test to determine whether a state law is preempted under ERISA § 514(a):

> "[W]e find that laws that have been ruled preempted are those that provide an alternative cause of action to employees to collect benefits protected by ERISA, refer specifically to ERISA plans and apply solely to them, or interfere with the calculation of benefits owed to an employee. Those that have not been preempted are laws of general application— often traditional exercises of state power or regulatory authority—whose effect on ERISA plans is incidental."

*Mack v. Estate of Mack*, 125 Nev. 80, 98, 206 P.3d 98, 110 (2009) (alteration in original) (quoting *Aetna Life Ins. Co. v. Borges*, 869 F.2d 142, 146 (2d Cir. 1989)). This is a misreading of our decision. In *Mack*, we merely noted that the Second Circuit's decision was informative of whether ERISA § 514(a) preempted the application of our slayer statute. *Id.* However, the ultimate question of whether a state statute is preempted is a question of congressional intent. *Id.*

Remarking that it is necessary to turn from the unhelpful text of ERISA when determining the scope of ERISA's preemptive effect, the United States Supreme Court instructed that courts must be guided by the objectives of ERISA. *Travelers*, 514 U.S. at 656. In its analysis of ERISA § 514(a), the Court found that the statute was intended

> "to ensure that plans and plan sponsors would be subject to a uniform body of benefits law; the goal was to minimize the administrative and financial burden of complying with conflicting directives among States or between States and the Federal Government . . . [and to prevent] the potential for conflict in substantive law . . . requiring the tailoring of plans and employer conduct to the peculiarities of the law of each jurisdiction."

*Id.* at 656-57 (quoting *Ingersoll-Rand Co. v. McClendon*, 498 U.S. 133, 142 (1990)). The Court explained that the basic purpose of ERISA § 514(a) was to avoid multiplicity of regulation. *Id.* at 657. In *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 96-97 (1983), the Supreme Court explained that a law "relate[s] to" a covered employee benefit plan "if it [(1)] has a connection with or [(2)] reference to such a plan." *California Div. of Labor Standards Enforcement v. Dillingham Constr. N.A., Inc.*, 519 U.S. 316, 324 (1997). Thus, in determining whether a state law would survive § 514(a) preemption, a court must look at the "actual operation of the state statute." *De Buono*, 520 U.S. at 815.

### *"Reference to"*

A law references an ERISA plan when it "acts immediately and exclusively upon ERISA plans" or "where the existence of ERISA plans is essential to the law's operation." *Dillingham*, 519 U.S. at 324-25. We look to the statutory language and the operation of the statute to determine whether a state law is preempted by ERISA § 514(a)'s "reference to" prong.

Initially, we observe, and the parties do not contend otherwise, that ERISA § 514(a)'s "reference to" analysis is not applicable in this case. NRS 695G.180 requires that all MCOs create a quality assurance program. The application of this statute, and relevant regulations, is not predicated on the existence of an ERISA plan. NRS 695G.180. It applies to all MCOs that are authorized to provide health-care services through managed care, regardless of whether it has ERISA status or has any relationship with an ERISA plan. Therefore, Nevada's quality assurance laws and regulations

are not preempted by ERISA § 514's "reference to" prong of preemption analysis.

### *"Connection with"*

Even when a law does not reference an ERISA plan, it is preempted if it has an impermissible connection with an ERISA plan. *Id.* at 325. In cases in which it considered whether a state law has a forbidden connection with ERISA plans, the United States Supreme Court has consistently found statutes that "mandate[ ] employee benefit structures or their administration" are preempted by ERISA § 514(a). *Travelers*, 514 U.S. at 657-58 (holding that ERISA § 514(a) does not preempt a New York statute requiring a surcharge on commercial insurers and health management organizations); *see also FMC Corp. v. Holliday*, 498 U.S. 52 (1990) (holding that a Pennsylvania statute that precluded reimbursement to an ERISA plan operator from the beneficiary in the event of recovery from a third party to be preempted by ERISA § 514(a)); *Shaw*, 463 U.S. 85 (holding that ERISA preempts state laws regulating benefit plans that prohibit discrimination based on pregnancy and that require specific benefits be paid); *Alessi v. Raybestos-Manhattan, Inc.*, 451 U.S. 504 (1981) (finding that New Jersey could not prohibit plans from setting off workers' compensation payments against employees' retirement benefits or pensions). However, nothing in the language of ERISA suggests that Congress sought to displace general health-care regulations. *Travelers*, 514 U.S. at 661. Notably, a mere influence or an indirect economic effect on an ERISA plan will not trigger the § 514(a) preemption. *Id.* at 659-60.

In applying ERISA § 514(a), the Court of Appeals for the Ninth Circuit has identified a number of factors to aid in determining whether a state law has a "connection with" ERISA plans:

> (1) whether the state law regulates the types of benefits of ERISA employee welfare benefit plans;
>
> (2) whether the state law requires the establishment of a separate employee benefit plan to comply with the law;
>
> (3) whether the state law imposes reporting, disclosure, funding, or vesting requirements for ERISA plans; and
>
> (4) whether the state law regulates certain ERISA relationships, including the relationships between an ERISA plan and employer and, to the extent an employee benefit plan is involved, between the employer and employee.

*Oper. Eng. Health & Welfare v. JWJ Contracting Co.*, 135 F.3d 671, 678 (9th Cir. 1998) (quotation omitted). Significantly, the Third, Fifth, Ninth, and Tenth Circuits also agree that ERISA pre-

empts suits predicated on administrative decisions made while administering an ERISA plan. *Bui v. American Telephone & Telegraph Co. Inc.*, 310 F.3d 1143, 1147-48 & n.11 (9th Cir. 2002). The Ninth Circuit explained that subjecting administrative decisions to individual states' laws would undermine Congress's purpose to have uniform administration of ERISA benefits.[7] *Id.* at 1148.

Courts agree that Congress did not intend for ERISA to preempt state medical malpractice laws, a traditional field of state regulation. *Id.* at 1147. However, they distinguish between actions taken in the capacity of medical-care providers and actions taken in the capacity of plan administrator. *Id.* at 1147-48 & n.11. For instance, the *Bui* court concluded that while the selection and retention of medical providers is an administrative decision preempted by ERISA § 514(a), a negligent-provision-of-services claim is not preempted. *Id.* at 1148-50.

We agree with the analyses adopted by the federal circuit courts and conclude that when a plaintiff's claim is predicated on administrative decisions made in the course of administering an ERISA plan, the claim is necessarily preempted. However, when the conduct complained of is not performed in the capacity of the ERISA plan, plan administrator, or plan agent, these claims are not preempted by ERISA § 514(a) because the relationship with the ERISA plan is too tangential. Extending § 514(a)'s preemption to these claims based on actions taken outside of an ERISA plan's administration would not further Congress's purpose of uniformity and would intrude unduly into matters that fall within the traditional police power of the state.

*ERISA § 514(a) preempts the application of NRS Chapter 695G in limited instances*

A claim predicated upon NRS Chapter 695G may be preempted if the MCO acts merely as an administrator or agent of the ERISA plan. If an MCO acts merely as an administrator or agent of an ERISA plan, then application of the quality assurance statutes and regulations to the MCO would be a direct regulation of the ERISA plan's benefit structure. This would impose a duty on the ERISA plan to monitor its service providers. In effect, the ERISA plan

---

[7]The Ninth Circuit observed that without preemption, Congress's intent would be subverted because: (1) administrators would have to follow individual state laws and not federal laws, (2) it would interfere with the relationship between the administrator and beneficiaries, and (3) it would provide an alternative enforcement mechanism. *Bui*, 310 F.3d at 1148.

would be required to provide as a benefit a quality assurance program to its members due to Nevada law. Imposition of such a requirement falls squarely within the scope of prohibited connection with an ERISA plan.

However, if the MCO's acts are independent of an ERISA plan, then ERISA § 514(a) would not preempt the application of NRS Chapter 695G. There is undoubtedly a strong possibility that NRS Chapter 695G will have an effect on an ERISA plan if it elects to merely purchase an insurance plan from an MCO or to lease access to the MCO's existing network of providers. The ERISA plan may experience high cost due to the quality assurance requirement and may have less options regarding what insurance plan or network is available; however, these would merely be indirect economic effects. *See Travelers*, 514 U.S. at 659. Such an indirect economic effect does not trigger § 514(a)'s preemption because it "does not bind plan administrators to any particular choice." *Id.* Moreover, in such capacity, NRS Chapter 695G serves only to regulate one of the many products that an ERISA plan might choose to purchase. *Washington Physicians Service Ass'n v. Gregoire*, 147 F.3d 1039, 1044-45 (9th Cir. 1998). "The mere fact that many ERISA plans choose to buy health insurance for their plan members does not cause a regulation of health insurance automatically to 'relate to' an employee benefit plan—just as a plan's decision to buy an apple a day for every employee, or to offer employees a gym membership, does not cause all state regulation of apples and gyms to 'relate to' employee benefit plans." *Id.* at 1045.

In the instant case, the question of whether Cervantes' claims are preempted under ERISA § 514(a)'s "related to" prong depends upon a determination of whether HPN merely facilitated the selection of providers by the Culinary Union Plan or if HPN leased out its existing network of providers.

Here, it is undisputed that the ERISA plan "would select certain outpatient providers with whom it wanted to contract and [HPN] would negotiate contracts with those providers. Thereafter, Prime Health would sign the contract on behalf of the [ERISA plan]."[8] Thus, because the Culinary Union selected its own providers, HPN's acts with ECSN are not independent of the ERISA plan. Rather, it was an administrative decision made by an ERISA plan that is subject to ERISA § 514(a) preemption.

Unlike quality of care claims that are traditionally left to state regulation, the quality assurance statute imposes a monitoring requirement upon the ERISA plan that is separate and apart from a claim concerning the quality of care. Rather, this imposition nec-

---

[8]As noted above, Cervantes failed to assert below that additional discovery was necessary to further explore the relationship between the Culinary Union Plan and HPN.

essarily interferes with the plan's administrative decision making and requires the plan to provide this additional monitoring benefit.

Because we conclude that the selection and retention of ECSN was an administrative decision by an ERISA plan, Cervantes' state law claims are preempted by ERISA § 514(a), and HPN was entitled to judgment as a matter of law. Accordingly, we affirm the district court's summary judgment.[9]

SAITTA, C.J., and CHERRY, GIBBONS, PICKERING, HARDESTY, and PARRAGUIRRE, JJ., concur.

---

[9]Because Rodriguez's claim for loss of consortium is derivative of Cervantes' claim for negligence, we also affirm summary judgment on that claim. *Turner v. Mandalay Sports Entm't*, 124 Nev. 213, 221-22, 180 P.3d 1172, 1178 (2008).