JANISE MUNDA AND GIBB MUNDA, APPELLANTS, *v.* SUMMERLIN LIFE & HEALTH INSURANCE COMPANY, RESPONDENT.

No. 55308

December 29, 2011                                267 P.3d 771

---

*Matthew L. Sharp Ltd.* and *Matthew L. Sharp*, Reno; *Friedman Rubin* and *William S. Cummings*, Anchorage, Alaska, for Appellants.

*Pisanelli Bice, PLLC*, and *Todd L. Bice, Debra L. Spinelli*, and *Jarrod L. Rickard*, Las Vegas, for Respondent.

Before the Court En Banc.[1]

---

[1]THE HONORABLE KRISTINA PICKERING, Justice, voluntarily recused herself from participation in the decision of this matter.

# OPINION

By the Court, DOUGLAS, J.:

In this appeal, we consider whether state law claims of negligence and negligence per se are preempted by the Employee Retirement Income Security Act (ERISA). In a recent opinion, *Cervantes v. Health Plan of Nevada*, 127 Nev. 789, 263 P.3d 261 (2011), we concluded that these same claims were preempted; however, this is a fact-intensive inquiry because ERISA preemption is dependent on the actual operation of a state statute. We conclude that under the set of facts alleged before us, there is no preemption because respondent Summerlin Life & Health Insurance Company's alleged actions were independent of the administration of the ERISA plan; therefore, the district court erred in granting Summerlin's motion to dismiss.

## FACTS

Respondent Summerlin is an insurer/managed care organization (MCO) doing business in the State of Nevada. As such, Summerlin contracts with medical providers to provide health-care services to its insureds. As an MCO, Summerlin is required to have in place a quality assurance program pursuant to NRS 695G.180. Summerlin contracted with the Endoscopy Center of Southern Nevada, the Gastroenterology Center of Nevada, and the doctors employed by or associated with the Gastroenterology Center of Nevada (collectively, the Clinic) to provide health-care services to its insureds. Appellants Janise and Gibb Munda allege that from at least 2002 on, Summerlin encouraged its insureds to seek treatment from the Clinic.

Between March 2004 and February 2008, the Clinic engaged in a number of unsafe medical practices, which were ultimately brought to light in early 2008 through an investigation conducted by the Southern Nevada Health District (Health District) and the Centers for Disease Control and Prevention. Summerlin subsequently terminated its contract with the Clinic based on the Health District's findings.

Janise Munda was insured by Summerlin through her employer's health plan, which was governed by ERISA. She sought treatment at the Clinic on February 16, 2007, and March 2, 2007, because it was a Summerlin provider. Janise was later diagnosed with hepatitis C, which the Health District determined she contracted as a result of being treated at the Clinic.

Janise and her husband, Gibb Munda, sued Summerlin for failure to comply with quality assurance standards, with causes of ac-

tion for negligence, negligence per se, breach of implied covenant of good faith and fair dealing/bad faith, and loss of consortium. The Mundas alleged in their complaint that Summerlin failed to identify the unsafe practices of or terminate its contract with the Clinic sooner because Summerlin failed to evaluate, audit, monitor, and supervise its providers as required by NRS 695G.180.[2] The Mundas' claims were based on Summerlin's role as an MCO, not on its role as an administrator of an ERISA plan. Summerlin filed a motion to dismiss, arguing that the Mundas' claims were preempted by ERISA. The district court granted Summerlin's motion pursuant to ERISA and NRCP 12(b)(5). The Mundas now appeal that decision.

## DISCUSSION

On appeal, the Mundas argue that the district court erred in dismissing their complaint as preempted by ERISA because their claims[3] do not fall under ERISA's preemption provisions, §§ 502(a) and 514(a) (codified at 29 U.S.C. §§ 1132(a) and 1144(a) (2011), respectively), which generally preclude state law claims relating to an employee benefit plan. Specifically, the Mundas argue that their claims are unrelated to the administration of the ERISA plan and, as such, their claims cannot be preempted by ERISA §§ 502(a) or 514(a) because Congress did not intend to use ERISA to preempt health and safety matters traditionally left to state regulation. We agree as to ERISA § 514(a).[4]

---

[2]NRS 695G.180(1) provides in part that "[e]ach managed care organization shall establish a quality assurance program designed to direct, evaluate and monitor the effectiveness of health-care services provided to its insureds."

[3]In their complaint, the Mundas pleaded negligence per se as a separate cause of action from negligence; however, it is not a separate cause of action, but rather a method of establishing the duty and breach elements of a negligence claim. *See Cervantes v. Health Plan of Nevada*, 127 Nev. 789, 793 n.4, 263 P.3d 261, 264 n.4 (2011). Because the Mundas' general negligence and negligence per se theories are both based on their claim that Summerlin breached its duty to evaluate, audit, monitor, and supervise its providers, the question of whether the theories are preempted by ERISA is answered through the same analysis. Therefore, we do not consider the Mundas' theories of negligence separately.

The Mundas also pleaded breach of implied covenant of good faith and fair dealing/bad faith based on their claim that Summerlin injured their rights under their insurance contract for unreasonably failing to evaluate, audit, monitor, and supervise its providers. This is a restatement of their negligence claim in the guise of a bad-faith claim. The Mundas have pleaded no facts, which if true, indicate that Summerlin intended to deprive them of the fruits of the contract. *See Insco v. Aetna Health & Life Ins. Co.*, 673 F. Supp. 2d 1180, 1194 (D. Nev. 2009). Therefore, we affirm the district court's dismissal of this claim only.

[4]ERISA § 502(a) is not applicable in this case because the Mundas do not seek to enforce ERISA plan benefits, and this opinion only addresses the relevant § 514(a) preemption. *See Insco*, 673 F. Supp. 2d at 1185 (ERISA

*Standard of review*

A district court order granting an NRCP 12(b)(5) motion to dismiss is subject to rigorous appellate review. Similar to the trial court, this court accepts the plaintiffs' factual allegations as true, but the allegations must be legally sufficient to constitute the elements of the claim asserted. In reviewing the district court's dismissal order, every reasonable inference is drawn in the plaintiffs' favor.

*Sanchez v. Wal-Mart Stores*, 125 Nev. 818, 823, 221 P.3d 1276, 1280 (2009) (internal citations omitted). This court reviews de novo a district court's order granting a motion to dismiss, and such an order will not be upheld " 'unless it appears beyond a doubt that the plaintiff could prove no set of facts . . . [that] would entitle him [or her] to relief.' " *Vacation Village v. Hitachi America*, 110 Nev. 481, 484, 874 P.2d 744, 746 (1994) (quoting *Edgar v. Wagner*, 101 Nev. 226, 228, 699 P.2d 110, 112 (1985)); *see Sanchez*, 125 Nev. at 823, 221 P.3d at 1280.

*Preemption under ERISA § 514(a)*

"Congress enacted ERISA to 'protect . . . the interests of participants in employee benefit plans and their beneficiaries,' by setting out substantive regulatory requirements for employee benefit plans, and to 'provide for appropriate remedies, sanctions, and ready access to federal courts.' " *Insco v. Aetna Health & Life Ins. Co.*, 673 F. Supp. 2d 1180, 1185 (D. Nev. 2009) (quoting *Aetna Health Inc. v. Davila*, 542 U.S. 200, 208 (2004)). As part of the enactment, ERISA has "expansive preemption provisions that are intended to ensure that employee benefit plan regulation is 'exclusively a federal concern.' " *Id.* (quoting *Aetna Health*, 542 U.S. at 208). "[The United States] Supreme Court has repeatedly held that the question of whether federal law preempts state law is one of congressional intent, and that Congress' purpose is the 'ultimate touchstone.' " *Brandner v. UNUM Life Ins. Co. of America*, 152 F. Supp. 2d 1219, 1223 (D. Nev. 2001).

However, the Supreme Court has also "instructed that there is a presumption against holding that ERISA preempts state or local laws regulating matters that fall within the traditional police powers of the State." *Golden Gate Restaurant v. City and County of S.F.*, 512 F.3d 1112, 1120 (9th Cir. 2008). Traditionally, such powers include the regulation of health and safety matters. *De Buono v. NYSA-ILA Medical and Clinical Service Fund*, 520 U.S.

§ 502(a) "contains a comprehensive scheme of civil remedies to enforce ERISA's provisions" and is the second strand of "ERISA's powerful preemptive force" (internal quotations omitted)).

806, 814 (1997). "[N]othing in the language of [ERISA] or the context of its passage indicates that Congress chose to displace general health-care regulation, which historically has been a matter of local concern." *New York State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.*, 514 U.S. 645, 661 (1995).

ERISA § 514(a) expressly "preempts all state laws that 'relate to' any employee benefit plan"; however, laws regulating insurance, banking, or securities are exempt. 29 U.S.C. § 1144(a) (2011); *Cervantes v. Health Plan of Nevada*, 127 Nev. 789, 794, 263 P.3d 261, 265 (2011). A law "relates to" a covered employee benefit plan if it has a "reference to" or "connection with" it. *California Div. of Labor Standards Enforcement v. Dillingham Constr. N.A. Inc.*, 519 U.S. 316, 324 (1997). We conclude that NRS Chapter 695G does not have a reference to or (under the set of facts alleged before us) a connection with an ERISA plan.

A law has a reference to an employee benefit plan for purposes of ERISA preemption analysis when it "acts immediately and exclusively upon ERISA plans . . . or where the existence of ERISA plans is essential to the law's operation." *Id.* at 325. This "reference to" prong does not preempt NRS 695G.180 because NRS Chapter 695G's quality assurance requirements apply to all MCOs, regardless of their ERISA status or relationship with any ERISA plan. *Cervantes*, 127 Nev. at 795-96, 263 P.3d at 266.

A law without a reference to an employee benefit plan may still be preempted if it has a prohibited "connection with" an ERISA plan. *Dillingham*, 519 U.S. at 325. To determine if a law has such a connection, courts consider the following factors:

> "(1) whether the state law regulates the types of benefits of ERISA employee welfare benefits plans; (2) whether the state law requires the establishment of a separate employee benefit plan to comply with the law; (3) whether the state law imposes reporting, disclosure, funding, or vesting requirements for ERISA plans; and (4) whether the state law regulates certain ERISA relationships, including the relationships between an ERISA plan and employer and, to the extent an employee benefit plan is involved, between the employer and employee."

*Insco*, 673 F. Supp. 2d at 1187 (quoting *Oper. Eng. Health & Welfare v. JWJ Contracting Co.*, 135 F.3d 671, 678 (9th Cir. 1998)).

"In evaluating these factors, courts are also to consider the purpose of ERISA, which is to provide a uniform regulatory regime over employee benefit plans." *Insco*, 673 F. Supp. 2d at 1187 (internal citations omitted).

### Administrative decisions

In *Cervantes v. Health Plan of Nevada*, this court joined the Third, Fifth, Ninth, and Tenth Circuits in holding that ERISA preempts suits that are predicated on administrative decisions made in administering an ERISA plan. 127 Nev. 796-97, 263 P.3d 261, 267 (2011); *see Bui v. American Telephone & Telegraph Co. Inc.*, 310 F.3d 1143, 1147-48 & n.11 (9th Cir. 2002). However, when the conduct at issue "is not performed in the capacity of the ERISA plan, plan administrator, or plan agent, these claims are not preempted by ERISA § 514(a) because the relationship with the ERISA plan is too tangential." *Cervantes*, 127 Nev. at 797, 263 P.3d at 267.

Claims predicated upon NRS Chapter 695G are preempted when an MCO is acting solely as an administrator or agent of an ERISA plan. *Id.* In these situations, applying NRS Chapter 695G would effectively be a direct regulation on an ERISA plan's benefit structure, as the statute imposes a duty on the ERISA plan to monitor its service providers. *Id.* This imposition of duty would clearly constitute a prohibited "connection with" an ERISA plan. *Id.* In *Cervantes*, because we determined that the MCO was acting solely as an agent of an ERISA plan, we held that its selection and retention of a service provider was an administrative decision by an ERISA plan subject to § 514(a) preemption. *Id.* at 797-98, 263 P.3d at 268.

However, if an MCO is acting independently of an ERISA plan, § 514(a) does not preempt NRS Chapter 695G's application. *Id.* at 797, 263 P.3d at 267. While NRS Chapter 695G may affect an ERISA plan if the plan elects to purchase an insurance plan or lease access to a provider network from an MCO, these would only be "indirect economic effects." *Id.* NRS Chapter 695G would not bind an ERISA plan to any particular choice; therefore, § 514(a)'s preemptive effect is not triggered. *Id.* In this situation, NRS Chapter 695G only affects an ERISA plan to the extent that it voluntarily chooses to utilize the products of an MCO that is regulated by the statute. *Id.*

The United States District Court for the District of Nevada recently dealt with an MCO acting independently of an ERISA plan in a case with facts similar to those alleged here. *Insco*, 673 F. Supp. 2d at 1180. In *Insco*, the plaintiff, who was insured by

Aetna in a plan paid for by his employer, alleged that he had been exposed to blood-borne diseases due to the malpractice of one of Aetna's providers. *Id.* at 1183. The plaintiff asserted the same claims (negligence, negligence per se, and breach of implied covenant of good faith and fair dealing) against Aetna as the Mundas now assert against Summerlin.[5] *Id.* at 1183-84.

The court found that NRS Chapter 695G was not preempted based on the "reference to" prong of ERISA § 514(a) preemption analysis because the relevant provisions applied regardless of the existence of an ERISA plan. *Id.* at 1187. In evaluating the "connection with" prong, the *Insco* court noted that under *Bui*, a claim based on negligence in selection or retention of a provider is an administrative decision, and therefore preempted by ERISA § 514(a). *Id.* at 1188. As such, if Aetna had been purely an administrator of the plan, it could not have been subject to negligence liability for selection and retention of providers. *Id.* However, the court distinguished Aetna's role as the administrator of an ERISA plan from its role as an MCO (with its own duties under Nevada law). *Id.* at 1189. Because Aetna's selection and retention choices were made in conjunction with its role as an MCO, independent from its administration of the ERISA plan, the state law claims based upon its allegedly negligent selection and retention of health-care providers were not preempted by ERISA § 514(a). *Id.* The court noted that "Aetna's choice to grant access to its Network as it exists, or its direct selection of providers for [Insco] under the contract, are not subject to suit under state law, but Aetna's choice of providers within its own preexisting healthcare Network is." *Id.*

In the present case, the Mundas alleged facts to support a finding that preemption does not apply. Specifically, the Mundas alleged that they were insured by Summerlin and that it was not merely an administrator of the ERISA plan. Thus, there is a question as to whether Summerlin's selection and retention choices regarding the Clinic were made in conjunction with its status as an MCO or its status as the administrator of an ERISA plan. ERISA § 514(a) does not preempt claims that are brought against Summerlin in its capacity as an MCO, instead of in its capacity as an ERISA plan administrator. As there is no preemption under the set of facts alleged before us, we conclude that the district court's order cannot be upheld because it does not appear beyond a doubt that the Mundas could not prove a set of facts that would entitle them to relief and the allegations were legally sufficient to constitute the elements of the claims asserted. Accordingly, we reverse

---

[5]The *Insco* court dismissed the plaintiff's breach-of-implied-covenant-of-good-faith-and-fair-dealing claim because it found that it was actually a restatement of his negligence claim as he had pleaded no facts, which if true, indicated that the insurer intended to deprive him of the "fruits of the contract." 673 F. Supp. 2d. at 1194.

the district court's order granting Summerlin's motion to dismiss and remand this matter to the district court for further proceedings consistent with this opinion.[6]

SAITTA, C.J., and CHERRY, GIBBONS, HARDESTY, and PARRAGUIRRE, JJ., concur.

---

[6]Because the Mundas' claim for loss of consortium is derivative of their claim for negligence, we also reverse and remand on this claim for further proceedings consistent with this opinion. *See Turner v. Mandalay Sports Entm't*, 124 Nev. 213, 221-22, 180 P.3d 1172, 1178 (2008).