PACIFICARE OF NEVADA, INC.; PACIFICARE LIFE AND HEALTH INSURANCE COMPANY; PACIFICARE LIFE ASSURANCE COMPANY; AND UNITED HEALTHCARE INSURANCE COMPANY, APPELLANTS, v. DOROTHY ROGERS, RESPONDENT.

No. 55713

October 27, 2011                    266 P.3d 596

---

*Jones Vargas* and *Constance L. Akridge* and *Matthew T. Milone*, Las Vegas; *Bryan Cave, LLP*, and *Lawrence G. Scarborough, Meridyth M. Andresen*, and *J. Alex Grimsley*, Phoenix, Arizona, for Appellants.

*Matthew L. Sharp, Ltd.*, and *Matthew L. Sharp*, Reno; *Gillock, Markley & Killebrew, PC*, and *Gerald I. Gillock* and *Nia C. Killebrew*, Las Vegas; *Friedman Rubin* and *William S. Cummings*, Anchorage, Alaska; *Friedman Rubin* and *Richard H. Friedman* and *Britt L. Tinglum*, Bremerton, Washington, for Respondent.

Before the Court EN BANC.

## OPINION

By the Court, PARRAGUIRRE, J.:

In this appeal, we address two issues regarding the enforceability of an arbitration provision. To begin, we consider the circumstances in which an arbitration provision contained in an expired contract may be properly invoked. Next, we address whether a plaintiff may rely on Nevada's unconscionability doctrine to invalidate an arbitration provision contained in a contract governed by the federal Medicare Act.

First, because the parties in this case did not expressly rescind the arbitration provision at issue, the provision survived the contract's expiration and it was properly invoked. Second, as the Medicare Act expressly preempts any state laws or regulations with respect to the type of Medicare plan at issue here, we conclude that Nevada's unconscionability doctrine is preempted to the extent that it would regulate federally approved Medicare plans. We therefore reverse the district court's order denying Pacificare's motion to compel arbitration.

### FACTS AND PROCEDURAL HISTORY

From 2007 to 2008, respondent Dorothy Rogers received Medicare benefits through appellant Pacificare's federally approved

Medicare Advantage Plan, Secure Horizons.[1] Rogers and Pacificare entered into separate contracts each year that provided the terms and conditions of coverage. In early 2007, Rogers received treatment from the Endoscopy Center of Southern Nevada, which is a facility approved by Pacificare for use by its Secure Horizons plan members. In early 2008, the Southern Nevada Health District discovered that the Endoscopy Center had engaged in unsafe medical practices and notified Rogers that she was at risk for several diseases as a result of her treatment. Shortly thereafter, Rogers tested positive for hepatitis C.

Rogers then sued Pacificare in district court, asserting various tort claims. Specifically, Rogers alleged that Pacificare should be held responsible for her injuries because it failed to adopt and implement an appropriate quality assurance program. In response, Pacificare moved to dismiss her claims and to compel arbitration based on a provision in the parties' 2007 contract. Rogers opposed the motions, arguing that the 2008 contract governed and that, in any event, the 2007 arbitration provision was unconscionable. Although the district court determined that the 2007 contract governed, it nonetheless agreed with Rogers' argument that the arbitration provision was unconscionable, and thus unenforceable. In doing so, the district court rejected Pacificare's argument that Nevada's common law unconscionability doctrine is preempted by the federal Medicare Act. This appeal followed.

## DISCUSSION

On appeal, Pacificare argues that the arbitration provision included in the 2007 contract governs Rogers' dispute and that the district court erred in concluding that the arbitration provision was unconscionable under Nevada contract law because such law is preempted by the federal Medicare Act. We agree on both counts, and therefore, we reverse the district court's order denying Pacificare's motion to compel arbitration. Before addressing these two issues, however, we provide an overview of the federal Medicare Act, as is necessary for understanding the following analyses.

### Overview of the Medicare Act

The Medicare Act creates a federally subsidized nationwide health insurance program for elderly and disabled individuals. The Act is separated into four broad parts: Part A (hospital insurance), Part B (medical insurance), Part C (Medical Advantage Plans), and Part D (prescription drug coverage). Title VII of the Social Secu-

---

[1]For the sake of clarity, we refer to appellants Pacificare of Nevada, Inc.; Pacificare Life and Health Insurance Company; Pacificare Life Assurance Company; and United Healthcare Insurance Company, collectively, as "Pacificare."

rity Act, 42 U.S.C. §§ 1395-1395hhh (2006). Pursuant to Part C, private entities may provide the federal insurance benefits to enrollees under Parts A and B through what are often referred to as "Part C Plans" or "Medicare Advantage [MA] Plans." Private companies that offer these plans are referred to as "MA Organizations." 42 C.F.R. § 422.2 (2010). MA Organizations and their plans contract with, and are subject to extensive regulation by, the Centers for Medicare and Medicaid Services (CMS). *See, e.g.*, 42 U.S.C. § 1395w-26(b)(1). CMS renews its contracts with MA Organizations on an annual basis. *See* 42 C.F.R. § 422.505(c).

Pursuant to federal law, Medicare enrollees may choose each year to receive benefits from the government-run Medicare plan or from one of the various MA plans offered by private MA Organizations. *See* 42 C.F.R. § 422.62. As part of the annual reselection process, the MA Organization providing benefits must present its enrollees with a document referred to as an Evidence of Coverage, or "EOC," which provides the terms and conditions of the contract between the MA Organization and the enrollee for the given year-long coverage period. All EOCs must be reviewed and approved by CMS prior to distribution. *See* 42 C.F.R. §§ 422.2260, 422.2262. Among other things, CMS must review the adequacy of formatting and font size, as well as the accuracy of the descriptions and information provided.[2] 42 C.F.R. §§ 422.2262(a), 422.2264(a).

Broadly speaking, CMS's role is analogous to the inquiry Nevada courts make when considering an unconscionability argument. *See D.R. Horton, Inc. v. Green*, 120 Nev. 549, 554, 96 P.3d 1159, 1162 (2004) ("A clause is procedurally unconscionable when . . . its effects are not readily ascertainable upon a review of the contract."). With this framework in mind, we proceed to address the issues on appeal.

*Rogers' dispute is governed by the 2007 EOC with Pacificare*

Pacificare is one of approximately 30 private companies that currently offer MA plans in Nevada. Rogers enrolled in Pacificare's 2007 and 2008 plans and received an EOC for each year. While the 2007 EOC contained an arbitration provision, the 2008 EOC did not.

The parties agree that Rogers underwent a medical procedure that allegedly resulted in her hepatitis C infection in January 2007. However, because Rogers did not discover her injury until 2008,

---

[2]This also includes a review to ensure that there is an "[a]dequate written explanation of the grievance and appeals process" and "that materials are not materially inaccurate or misleading." 42 C.F.R. § 422.2264(a)(3), (d). CMS must disapprove (or later require the correction of) such material if it is inaccurate or misleading. 42 U.S.C. § 1395w-21(h)(2).

the parties disagree as to whether the 2007 or 2008 contract governs.

Specifically, Pacificare contends that the 2007 arbitration agreement governs Rogers' dispute because the alleged injuries resulted from services rendered in 2007 and the contract governs "any and all disputes" arising between January 1, 2007, and December 31, 2007. Conversely, Rogers contends that the 2008 contract—which did not contain an arbitration provision—explicitly replaced the expired 2007 agreement and thus governs her claims.

This court reviews issues of contract interpretation de novo. *See Phillips v. Parker*, 106 Nev. 415, 417, 794 P.2d 716, 718 (1990). We have not considered whether an arbitration provision may survive the expiration of the contract in which it is contained. However, it is generally accepted that the expiration of a contract does not necessarily terminate arbitration provisions included therein. *See Nolde Bros., Inc. v. Bakery Workers*, 430 U.S. 243, 252 (1977) ("[T]he parties' obligations under their arbitration clause survived contract termination when the dispute was over an obligation arguably created by the expired agreement.").

After reviewing the relevant contractual documents, we conclude that the parties' 2007 arbitration agreement governs the dispute at issue. The 2007 contract mandated arbitration for "any and all disputes," specifically including disputes over "ANY MEDICAL SERVICES RENDERED UNDER THIS CONTRACT." This language covers the allegations asserted by Rogers here because they are based on medical services rendered in January 2007. As such, the obligations involving Rogers' medical procedure were created by the terms of the expired contract, including the arbitration clause.

"Absent the explicit intention to rescind an arbitration clause, . . . the clause will survive even where the prior agreement itself is rescinded by the latter agreement." *Homestake Lead Co. of Mo. v. Doe Run Resources*, 282 F. Supp. 2d 1131, 1142 (N.D. Cal. 2003). Therefore, in order to effectively terminate an arbitration provision in an expired contract, the parties must *expressly rescind* the arbitration provision itself—not simply the contract in which the provision is contained. *Id.*

In this case, the 2008 contract contained generic language purporting to "replace all prior" contracts. This language did not expressly rescind the parties' 2007 arbitration agreement under which the obligations in this case were created. Because the 2007 arbitration provision was not explicitly rescinded, the provision survived the expiration of the 2007 contract and its replacement by the 2008 contract. Therefore, unless the district court's uncon-

scionability analysis is upheld, Rogers' claims are subject to mandatory arbitration under the 2007 contract.[3]

*The Medicare Act preempts inquiry into whether the arbitration provision is unconscionable*

Pacificare argues that Nevada state law governing enforceability of contracts is preempted by the Medicare Act and that the district court therefore erred in applying Nevada's unconscionability doctrine to invalidate the parties' 2007 arbitration agreement. We agree.

Preemption, which provides that federal law supersedes state law, arises from the Supremacy Clause of the United States Constitution and may be either express or implied. U.S. Const. art. VI, cl. 2. "Whether state law is preempted by a federal statute or regulation is a question of law, subject to our de novo review." *Nanopierce Tech. v. Depository Trust*, 123 Nev. 362, 370, 168 P.3d 73, 79 (2007).

When a federal act contains an express preemption provision, this court's primary task is to "identify the domain expressly preempted by that language." *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 484 (1996) (quotation omitted). That task must "in the first instance focus on the plain wording of the clause, which necessarily contains the best evidence of Congress' pre-emptive intent." *CSX Transp., Inc. v. Easterwood*, 507 U.S. 658, 664 (1993).

The preemption provision in the Medicare Act that is at issue in this appeal provides:

> The standards established under [Part C] shall supersede any State law or regulation (other than State licensing laws or State laws relating to plan solvency) with respect to MA plans which are offered by MA Organizations under this part.

42 U.S.C. § 1395w-26(b)(3).

In identifying the domain that is expressly preempted by this language, two terms warrant further consideration: "standards" and "any State law or regulation." *Id.* Because these terms are competently addressed in the recent Ninth Circuit decision *Do Sung Uhm v. Humana, Inc.*, 620 F.3d 1134 (9th Cir. 2010), we incorporate its analysis into our own.

---

[3]Rogers contends that the arbitration provision should be invalidated on the ground that it is ambiguous. We disagree. To the extent that the arbitration clause is ambiguous, "Nevada courts resolve all doubts concerning the arbitrability of the subject matter of a dispute in favor of arbitration." *Int'l Assoc. of Firefighters v. City of Las Vegas*, 104 Nev. 615, 618, 764 P.2d 478, 480 (1988).

### *"Standards"*

Our first consideration is whether the term "standards" in the preemption provision of the Medicare Act necessarily includes the arbitration provision contained in the EOC. While the term "standard" is not defined in the Act, "a 'standard' within the meaning of the preemption provision is a statutory provision or a regulation promulgated under the Act and published in the Code of Federal Regulations." *Id.* at 1148 n.20. Applying this broad definition, we note, as did the Ninth Circuit in *Uhm*, that CMS has promulgated regulations governing "marketing materials." *Id.* at 1152.

Notably, the term "marketing materials" includes, among other things, an explanation of "how Medicare services are covered under an MA plan, including conditions that apply to such coverage." 42 C.F.R. § 422.2260(4). Accordingly, certain contractual documents, such as an EOC, are considered marketing materials. *See Uhm*, 620 F.3d at 1151; *Clay v. Permanente Medical Group, Inc.*, 540 F. Supp. 2d 1101, 1109 (N.D. Cal. 2007) ("By federal regulation, the EOC is considered 'marketing material' and must be approved by the CMS.").

Thus, the arbitration provision can be considered "marketing material" by virtue of its placement within the EOC. Moreover, because CMS has promulgated regulations governing these "marketing materials," the regulations themselves can be considered "standards" for purposes of the Medicare preemption provision.

### *"Any State law or regulation"*

Rogers contends that regardless of the term "standards," review of the arbitration provision for unconscionability should not be preempted because the phrase "any State law or regulation" does not include the generally applicable common laws at issue here.[4] As summarized below, this argument is unpersuasive because legislative history shows that the Act's preemption provision has been specifically amended to include generally applicable common law.

Prior to 2003, Congress recognized a presumption against preemption unless a state law was in conflict with a Medicare requirement or fell within one of four express categories of preempted standards. *See* Balanced Budget Act of 1997, Pub. L. No. 105-33, § 1856(b)(3), 111 Stat. 251, 319; Medicare Prescription

---

[4]Rogers also claims that because Nevada's unconscionability doctrine is a law of general applicability, it should not be considered as a law "with respect to MA plans." 42 U.S.C. § 1395w-26(b)(3). However, the *Uhm* court specifically rejected this line of reasoning, holding that "nothing in the statutory text of the Act suggests that a state law or regulation must apply *only* to [an MA plan] in order to constitute a law 'with respect to'" an MA plan. *Uhm*, 620 F.3d 1150 n.25.

Drug Benefit, 70 Fed. Reg. 4194, 4319 (Jan. 28, 2005). In 2003, Congress reversed this negative presumption and provided that state laws are "presumed to be preempted unless they fall into two specified categories[,]" which are inapplicable here. Establishment of the Medicare Advantage Program, 69 Fed. Reg. 46866, 46904 (proposed Aug. 3, 2004).

Because the MA program is a federal program operated by federal law, Congress explained that "[s]tate laws, do not, and should not apply, with the exception of state licensing laws or state laws related to plan solvency[,]" which are the two specified exceptions. *Uhm*, 620 F.3d at 1149 (quoting H.R. Rep. No. 108-391, at 557 (2003)). This language demonstrates a legislative intent to broaden the preemption provision beyond those state laws that are simply inconsistent with enumerated categories of standards. *Id.* at 1149-50. Accordingly, " 'all [s]tate standards, *including those established through case law*, are preempted to the extent they specifically would regulate MA plans.' " *Id.* at 1156 (quoting commentary on final rule, 70 Fed. Reg. 4588, 4665 (Jan. 28, 2005)).

In light of the legislative history of the Medicare Act and the Ninth Circuit decision in *Uhm*, we conclude that Nevada's unconscionability doctrine is preempted to the extent that it would specifically regulate MA plans. Allowing state courts to review Medicare contracts for unconscionability risks the same result that the Ninth Circuit warned of in *Uhm*, namely, "that materials CMS has deemed not misleading—and therefore allowed to be distributed—will later be determined 'likely to mislead' by a state court." 620 F.3d at 1152. Accordingly, we conclude that any inquiry into the arbitration provision's unconscionability is foreclosed by the express preemption provision in the Medicare Act.

## CONCLUSION

Because the arbitration provision was not expressly rescinded, we conclude that it survived expiration of the 2007 contract and was properly invoked. Moreover, because CMS's regulations governing the approval of MA plans are standards that hold preemptive effect under the Medicare Act, Nevada law governing contracts—specifically whether a provision is unconscionable and thus unenforceable—falls into the category of "any state law or regulation" that may be preempted. We therefore reverse the district court's order denying Pacificare's motion to compel arbitration and remand for further proceedings consistent with this opinion.

SAITTA, C.J., and DOUGLAS, CHERRY, GIBBONS, PICKERING, and HARDESTY, JJ., concur.