**130 Nev., Advance Opinion 55**
IN THE SUPREME COURT OF THE STATE OF NEVADA

| | |
|---|---|
| LOUIS MORRISON,<br>Appellant,<br>vs.<br>HEALTH PLAN OF NEVADA, INC.;<br>SIERRA HEALTH SERVICES, INC.;<br>SIERRA HEALTH AND LIFE INSURANCE<br>COMPANY, INC.; SIERRA HEALTH-CARE<br>OPTIONS, INC.; UNITED HEALTHCARE<br>INSURANCE COMPANY; AND UNITED<br>HEALTHCARE SERVICES, INC.,<br>Respondents. | No. 61082<br><br>**FILED**<br><br>JUL 10 2014<br><br> |

Appeal from a district court order dismissing a tort action. Eighth Judicial District Court, Clark County; Rob Bare, Judge.

*Affirmed.*

Kemp, Jones & Coulthard, LLP, and Will Kemp and Eric M. Pepperman, Las Vegas,
for Appellant.

Holland & Hart, LLP, and Constance L. Akridge and Matthew T. Milone, Las Vegas; Bryan Cave LLP and Lawrence G. Scarborough, J. Alex Grimsley, and Meridyth M. Andresen, Phoenix, Arizona,
for Respondents.

McDonald Carano Wilson LLP and Debbie A. Leonard and Seth T. Floyd, Las Vegas; Crowell & Moring LLP and Arthur N. Lerner and April N. Ross, Washington, D.C.,
for Amicus Curiae America's Health Insurance Plans, Inc.

14-22350

Matthew L. Sharp, Ltd., and Matthew L. Sharp, Reno; Gillock & Killebrew and Gerald I. Gillock and Nia C. Killebrew, Las Vegas; Edward M. Bernstein & Associates and Patti S. Wise and Gary W. Call, Las Vegas; Friedman Rubin and Richard H. Friedman and William S. Cummings, Bremerton, Washington,
for Amici Curiae Dolores J. Cappetto, Carole Grueskin, James London, Rodolfo Meana, and Dorothy Rogers.

Fennemore Craig Jones Vargas and James L. Wadhams and Alexis L. Brown, Las Vegas,
for Amicus Curiae Nevada Association of Health Plans.

---

BEFORE THE COURT EN BANC.[1]

## OPINION

By the Court, HARDESTY, J.:

In this appeal, we are asked to determine whether a Medicare beneficiary's state common law negligence claim against his private health insurance company, through which he is receiving his Medicare benefits, is preempted by the federal Medicare Act. Because we conclude that state common law negligence claims regarding the retention and investigation of contracted Medicare providers are expressly preempted by the Medicare Act, we affirm the district court's order.

### FACTS AND PROCEDURAL HISTORY

Respondents Health Plan of Nevada, Inc.; Sierra Health Services, Inc.; Sierra Health and Life Insurance Company, Inc.; Sierra

---

[1]The Honorable Ron Parraguirre, Justice, voluntarily recused himself from participation in the decision of this matter.

Health-Care Options, Inc.; United Healthcare Insurance Company; and United Healthcare Services, Inc. (collectively, HPN) are health insurance businesses that specialize in health maintenance and/or managed care. They are engaged in the joint venture of providing insurance, including providing medical services to Medicare beneficiaries through the administration of Medicare Advantage (MA) Plans. Appellant Louis Morrison is a Medicare beneficiary who received his Medicare benefits through an MA Plan offered by HPN. Under HPN's insurance contract, Morrison was required to seek medical care from providers chosen by HPN. Since at least 2004, HPN had contracted with the Endoscopy Center of Southern Nevada, the Gastroenterology Center of Nevada, and the doctors employed or associated with the Gastroenterology Center of Nevada (collectively, the Clinic).[2] In 2006, Morrison was treated by the Clinic based on its status as a contracted provider for HPN; as a result of his treatment there, he became infected with hepatitis C.

Morrison's second amended complaint alleged that HPN breached its duty to "use reasonable care to select its health care providers" and "to inquire into the medical practices at the clinic" and was negligent in directing him to seek treatment at the Clinic.[3] The complaint

---

[2]It appears that HPN contracted with the Clinic prior to 2004, but the record fails to reveal the commencement date of the contract.

[3]Morrison's original complaint contained allegations that HPN failed to monitor medical practices at the Clinic and that it violated NRS Chapter 695G, which establishes Nevada's quality assurance program. HPN filed a motion to dismiss the claim as preempted by federal law. The district court agreed the claim was preempted, but it granted Morrison leave to amend the complaint. In his first amended complaint, Morrison still alleged a failure to monitor the Clinic but removed any references to the Nevada statutes. HPN filed another motion to dismiss based on

*continued on next page...*

Supreme Court
OF
Nevada

(O) 1947A

alleged that HPN failed to properly investigate the Clinic and knew or should have known that since at least 2004 the Clinic engaged in unsafe medical practices causing a high risk of transmission of blood borne pathogens, such as hepatitis C, to patients at the Clinic. The district court ultimately dismissed Morrison's second amended complaint with prejudice, finding that Morrison's claim was preempted by the federal Medicare Act pursuant to this court's decision in *Pacificare of Nevada, Inc. v. Rogers*, 127 Nev. ___, 266 P.3d 596 (2011). Morrison argues on appeal that the district court erred in applying *Rogers* to dismiss his claim because the Medicare Act's preemption statute does not apply to his state common law negligence claim.

## DISCUSSION

To resolve this appeal, we must determine whether state common law negligence claims against Medicare plan providers are preempted by the federal Medicare Act.[4] The Medicare Act, enacted as Title XVIII of the Social Security Act and codified at 42 U.S.C. §§ 1395-1395kkk (2012), "creates a federally subsidized nationwide health

---

*...continued*
preemption. The district court again agreed that the claim was preempted because, despite the removal of references to the Nevada statutes, the claim was still one for negligent implementation of a quality assurance program. But the district court once again allowed Morrison to amend his complaint.

[4]The dissent discusses at length, and cites to cases as well as the Restatement (Second) of Torts, the proposition that one can sue an HMO for negligence in its selection and retention of its providers. However, the majority of the cases cited by the dissent involve a hospital's duty of care, not an HMO's duty of care. Moreover, none of these cases involve Medicare preemption, which is the issue in this case.

insurance program for elderly and disabled individuals." *Rogers*, 127 Nev. at ___, 266 P.3d at 598. Pursuant to Part C of the Act, beneficiaries may receive Medicare benefits through MA plans provided by private entities called MA organizations. *Id.* (citing 42 C.F.R. § 422.2 (2010)).

"MA Organizations and their plans contract with, and are subject to extensive regulation by, the Centers for Medicare and Medicaid Services (CMS)." *Id.*; *see, e.g.*, 42 U.S.C. § 1395w-26(b)(1) (2012). Importantly, each MA organization that maintains one or more MA plans is required to adhere to a federally regulated quality improvement program. 42 C.F.R. § 422.152(a) (2013). The regulations specifically require that the MA organization "[m]ake available to CMS information on quality and outcomes measures that will enable beneficiaries to compare health coverage options and select among them." *Id.* § 422.152(b)(3)(iii). The quality improvement program also requires that each MA organization "have written policies and procedures for the selection and evaluation of providers." *Id.* § 422.204(a). An MA organization must also ensure that each physician or other health care professional be initially credentialed by review of verified "licensure or certification from primary sources, disciplinary status, eligibility for payment under Medicare, and site visits as appropriate." *Id.* § 422.204(b)(2)(i).

Although CMS does not directly select the physicians or facilities that are included in an MA plan's network, federal regulations require an MA organization to select and retain only those providers that meet the qualifications specified in the Medicare Act. *See id.* § 422.204(b). Furthermore, CMS has specified "requirements for relationships between . . . MA organizations[ ] and the physicians and other health care

SUPREME COURT
OF
NEVADA

(O) 1947A

5

professionals and providers with whom they contract to provide services to Medicare beneficiaries enrolled in an MA plan." Centers for Medicare & Medicaid Services, *Medicare Managed Care Manual*, Ch. 6, § 10 (Rev. 24, June 6, 2003).

*Morrison's common law negligence claim is expressly preempted by the Medicare Act*

The Medicare Act contains an express preemption clause which states that

> [t]he standards established under this part shall supersede any State law or regulation (other than State licensing laws or State laws relating to plan solvency) with respect to MA plans which are offered by MA organizations under this part.

42 U.S.C. § 1395w-26(b)(3) (2012). The scope of this preemption statute is very broad, and the "MA standards set forth in 42 CFR 422 supersede any State laws, regulations, contract requirements, or other standards that would otherwise apply to MA plans," with the exception of laws relating to licensing and plan solvency. *Medicare Managed Care Manual*, Ch. 6, § 30.1 (Rev. 101, August 18, 2011). "In other words, unless they pertain to licensure and/or solvency, State laws and regulations that regulate health plans do not apply to MA plans offered by MA organizations." *Id.*

When Congress explicitly conveys its intent to preempt in a statute, express preemption exists. *Rolf Jensen & Assocs., Inc. v. Eighth Judicial Dist. Court*, 128 Nev. ___, ___, 282 P.3d 743, 746 (2012) ("The preemption doctrine emanates from the Supremacy Clause of the United States Constitution, pursuant to which state law must yield when it frustrates or conflicts with federal law."). "When a federal act contains an express preemption provision, this court's primary task is to 'identify the domain expressly pre-empted by that language.'" *Rogers*, 127 Nev. at ___,

266 P.3d at 600 (quoting *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 484 (1996)). In doing so, we must "'focus on the plain wording of the clause, which necessarily contains the best evidence of Congress' pre-emptive intent.'" *Id.* (quoting *CSX Transp., Inc. v. Easterwood*, 507 U.S. 658, 664 (1993)). Even when there is no statutory language expressly preempting state law, preemption may be implied if Congress intended to thoroughly occupy the field or when the federal law conflicts with state law. *Rolf Jensen*, 128 Nev. at ___, 282 P.3d at 746. "Whether state law claims are preempted by federal law is a question of law that we review de novo, without deference to the findings of the district court." *Id.*

With respect to Medicare Act preemption, we previously considered this clause in *Rogers*. 127 Nev. at ___, 266 P.3d at 600. In that case, the plaintiff filed suit against Pacificare, her Medicare provider, for injuries resulting from treatment she received at a Pacificare-approved facility under its MA plan. *Id.* at ___, 266 P.3d at 598. Similar to this case, the plaintiff asserted that Pacificare was liable for her injuries because it neglected to employ a proper quality assurance program. *Id.* We did not address whether her claims were preempted by the Medicare Act, however, because Pacificare argued that an arbitration provision included in the parties' contract governed, necessitating dismissal of plaintiff's claims, and thus the question before us was whether Nevada's common law unconscionability doctrine is preempted by the Medicare Act.

In resolving that issue, we considered the express language and legislative history of the Medicare Act's preemption provision. *Id.* at ___, 266 P.3d at 600-01. We stated that "[p]rior to 2003, Congress recognized a presumption against preemption unless a state law was in conflict with a Medicare requirement or fell within one of four express

categories of preempted standards." *Rogers*, 127 Nev. at ___, 266 P.3d at 601. We then noted, however, that the 2003 amendment of the Act broadened the preemption coverage by stating that state laws are presumed to be preempted unless the law in question falls within two specific categories: state licensing requirements or state laws related to plan solvency. Medicare Program; Establishment of the Medicare Advantage Program, 69 Fed. Reg. 46866, 46904 (proposed Aug. 3, 2004) (to be codified at 42 C.F.R. pt. 417 and 422); *see Rogers*, 127 Nev. at ___, 266 P.3d at 601. Thus, we concluded that the "legislative history shows that the Act's preemption provision has been specifically amended to include generally applicable common law." *Rogers*, 127 Nev. at ___, 266 P.3d at 601; *see Estate of Ethridge v. Recovery Mgmt. Sys., Inc.*, ___ P.3d ___, ___, No. 1 CA-CV-12-0740, 2014 WL 1911006, at *4 (Ariz. Ct. App. May 13, 2014) ("The amendment was intended to 'clarif[y] that the MA program is a federal program operated under Federal rules. State laws, do not, and should not apply, with the exception of state licensing laws or state laws related to plan solvency.'" (alteration in original) (quoting H.R. Rep. No. 108-391, at 557 (2003), *reprinted in* 2003 U.S.C.C.A.N. 1808, 1926)).

Thus, as we concluded in *Rogers*, the Medicare preemption statute "demonstrates a legislative intent to broaden the preemption provision beyond those state laws that are simply inconsistent with enumerated categories of standards." *Rogers*, 127 Nev. at ___, 266 P.3d at 601. Therefore, "'all [s]tate standards, *including those established through case law*, are preempted to the extent they specifically would regulate MA plans.'" *Id.* (alteration in original) (quoting *Do Sung Uhm v. Humana, Inc.*, 620 F.3d 1134, 1156 (9th Cir. 2010) (internal quotations omitted)).

*Federal standards exist regarding the conduct at issue in Morrison's common law negligence claim*

Morrison argues that Congress intended for state laws and regulations to be preempted only when an express Medicare standard exists. And because no published Medicare standard exists that would supersede his common law negligence claim that HPN negligently directed him to receive treatment at the Clinic, he contends, the district court erred in concluding that it was expressly preempted. We disagree.

We have already concluded that a state law need not be "inconsistent" with the federal standard to be preempted, but rather, as long as a federal standard exists regarding the conduct at issue "'all [s]tate standards, including those established through case law, are preempted to the extent they specifically would regulate MA plans." *Rogers*, 127 Nev. at ___, 266 P.3d at 601 (alteration in original) (emphasis omitted) (quoting *Do Sung Uhm*, 620 F.3d at 1156). But even if we accepted Morrison's argument that state law claims are preempted only where express Medicare standards exist, Morrison's claim would be preempted. "While the term 'standard' is not defined in the Act, 'a "standard" within the meaning of the preemption provision is a statutory provision or a regulation promulgated under the Act and published in the Code of Federal Regulations.'" *Id.* at 600 (quoting *Do Sung Uhm*, 620 F.3d at 1148 n.20).

As noted above, CMS has promulgated regulations for MA organizations to adhere to when selecting and contracting with providers for its MA plans. *See, e.g.*, 42 C.F.R. § 422.4(a)(1)(i) (2013) (providing that CMS will approve the network of providers to confirm that all federal standards, including quality of care, are being met); *id.* § 422.204 (setting forth the general standards for MA organizations regarding "[p]rovider

SUPREME COURT
OF
NEVADA

(O) 1947A

selection and credentialing"); *id.* § 422.152(a) (requiring MA organizations to maintain quality improvement programs for each MA plan, which must include ongoing evaluation and quality assessment); *id.* § 422.152(f)(3) (requiring that "[f]or each plan, the organization must correct all problems that come to its attention through internal surveillance, complaints, or other mechanisms").

CMS has specified "requirements for relationships between . . . MA organizations[ ] and the physicians and other health care professionals and providers with whom they contract to provide services to Medicare beneficiaries enrolled in an MA plan." Centers for Medicare & Medicaid Services, *Medicare Managed Care Manual*, Ch. 6, § 10 (Rev. 82, April 27, 2007). In particular,

> [a]n MA organization's site visit policy must include procedures for detecting deficiencies and have mechanisms in place to address those deficiencies. . . . The MA organization must develop and implement policies that address the ongoing monitoring of sanctions and grievances filed against health care professionals. . . . In the event that an MA organization finds an incidence of poor quality or any type of sanction activity against a health care professional, it should intervene and correct the situation appropriately.

*Id.* § 60.3. Furthermore, in interpreting its regulations, CMS has stated that state laws which "set forth ongoing marketing, quality assurance, or network adequacy requirements for MA plans" are preempted. *Id.*, Ch. 10, § 30.1.

Thus, federal law provides standards that MA organizations must adhere to in conducting the relationship with their contracted providers. A state law action asserting that HPN was negligent in directing its insureds to the Clinic could result in the imposition of

SUPREME COURT
OF
NEVADA

(O) 1947A

additional state law requirements on the quality assurance regime regulated by CMS. Thus, we conclude that even if the Medicare preemption provision applied only when express Medicare provisions exist, Morrison's state common law negligence claims would still be preempted. *See Rogers*, 127 Nev. at ___, 266 P.3d at 601.

The dissent argues that the federal regulations we cite do not immunize providers from liability and "fail[ ] to touch on the generally applicable negligence claim at issue here." Dissenting opinion *post.* at 7. The dissenting justices' argument maintains that the minimum standards do not immunize providers from liability without exploring why they are not standards that "supersede any State law or regulation (other than State licensing laws or State laws relating to plan solvency) with respect to MA plans." 42 U.S.C. § 1395w-26(b)(3) (2012).

Furthermore, the dissent mischaracterizes the nature of Morrison's claim, referring to it as a "negligent selection claim." Dissenting opinion *post.* at 2. Certainly, Morrison's second amended complaint stated that HPN failed "to use reasonable care to select its health care providers" and "to inquire into the medical practices at the clinic." But our review of the record reveals that Morrison argued to the district court and to this court that he sought damages for HPN's negligence in directing its insureds to the Clinic after HPN became aware that patients undergoing procedures at the Clinic had contracted hepatitis C. Thus, Morrison's claim was not one of negligent selection, but rather, was based on HPN's failure to monitor its provider. This is a negligent quality assurance claim that is specifically covered by the federal regulatory scheme. Interestingly, the dissent admits that the Medicare standards we cite "might preempt Nevada's quality assurance standards,

established by NRS 695G.180," dissenting opinion *post.* at 6, yet the dissenting justices fail to distinguish why a common law claim based upon the same conduct would not be preempted. Even assuming that the claim is not directly related to quality assurance, as we noted earlier in this opinion, *supra* at 10, Medicare has established standards that broadly regulate an MA organization's conduct and relationship with the providers to whom it sends its insureds, and such regulations preempt Morrison's claim related to that relationship. *See, e.g.,* 42 C.F.R. § 422.152(f)(3) (requiring that "[f]or each plan, the organization must correct all problems that come to its attention through internal surveillance, complaints, or other mechanisms").

*The Medicare Act's preemption clause applies to claims against MA organizations*

Morrison also argues that even if the Medicare Act's preemption provision applies to state common law negligence claims, it does not apply in this matter because his claim is asserted against his MA organization, not his MA plan. He claims that the Medicare Act preemption clause only expressly preempts "any State law or regulation . . . with respect to MA plans," and therefore the preemption statute does not apply to his claim against his MA organization. 42 U.S.C. § 1395w-26(b)(3) (2012). In addition, he argues that this court has already held in *Munda v. Summerlin Life & Health Insurance Co.,* 127 Nev. ___, 267 P.3d 771 (2011), that a plaintiff's identical negligence claim is not preempted by ERISA and that the "with respect to" language in the Medicare Act should be interpreted in the same way as the language in ERISA which preempts state laws that "relate to" employee benefit plans. *See* 29 U.S.C. § 1144(a) (2012).

First, we look to the plain language of the Medicare Act's preemption provision which states that "[t]he standards established under this part shall supersede any State law or regulation . . . *with respect to MA plans which are offered by MA organizations under this part.*" 42 U.S.C. § 1395w-26(b)(3) (2012) (emphasis added). In looking at the plain language of the provision as a whole, we determine that because MA plans can only be offered by MA organizations, the two are linked such that a claim regarding one is necessarily a claim regarding both. Morrison would have no claim against HPN if not for the MA plan. Moreover, in *Rogers* we failed to see a distinction between a claim brought against the MA organization and a claim brought against the MA plan. 127 Nev. at ___ n.4, 266 P.3d at 601 n.4 ("'[N]othing in the statutory text of the Act suggests that a state law or regulation must apply *only* to [an MA plan] in order to constitute a law "with respect to"' an MA plan." (second alteration in original) (quoting *Do Sung Uhm*, 620 F.3d at 1150 n.25)). Finally, reading the statute in the way Morrison urges would lead to an absurd result, as the insured could simply name its MA organization, and not the MA plan, as the defendant in order to avoid preemption. We thus conclude that Morrison's argument regarding the language of the Medicare Act fails.[5] *Las Vegas Taxpayer Accountability Comm. v. City*

---

[5]Morrison additionally argues that his case is distinguishable from *Rogers* because the negligence common law under which he is bringing his claim does not regulate MA plans, only the corporate choices of his insurer. We reject this argument, as the conduct identified in Morrison's common law negligence claim is the same conduct that is specifically regulated by the Medicare Act. As such, if Morrison is allowed to argue that a different state standard should be applied to the MA organization, the federal regulation of MA plans would be frustrated, and we must yield

*continued on next page...*

Supreme Court
OF
Nevada

(O) 1947A

*Council of Las Vegas*, 125 Nev. 165, 177, 208 P.3d 429, 437 (2009) ("[W]hen interpreting a statute, the language of the statute should be given its plain meaning . . . .").

We also conclude that Morrison's argument regarding our interpretation of the preemption clause in ERISA fails to support his position. Morrison relies upon *Munda v. Summerlin Life & Health Insurance Co.*, 127 Nev. ___, 267 P.3d 771, 776 (2011), where this court ultimately determined that the insureds' claim that their insurer was negligent in failing to comply with quality assurance standards was not preempted by ERISA. In *Munda*, we discussed that generally "ERISA preempts [state] suits that are predicated on administrative decisions made in administering an ERISA plan," which include decisions regarding the selection and retention of providers. 127 Nev. at ___, 267 P.3d at 775. However, we concluded that the plaintiffs' claim was not preempted because they alleged facts to show that their insurer/managed care organization (MCO) was not acting in its capacity as an administrator of the ERISA plan when it selected and oversaw its providers, but rather, in

---

*...continued*
to the federal law. *See Rolf Jensen & Assocs., Inc. v. Eighth Judicial Dist. Court*, 128 Nev. ___, ___, 282 P.3d 743, 746 (2012).

Finally, Morrison argues that this case is distinguishable from *Rogers* because there is no risk of an inconsistent result by allowing his negligence claim to survive. Morrison reasons that if HPN is found negligent, it would not run afoul of any Medicare standard because there is no standard that allows an HMO to direct an insured to a provider it knows or should know uses unsafe practices. This argument is unavailing. The concern in *Rogers*, that federal and state standards will differ and lead to inconsistent results, is applicable here. *See Pacificare of Nev., Inc. v. Rogers*, 127 Nev. ___, ___, 266 P.3d 596, 601 (2011).

its independent role as an insurer. 127 Nev. at ___, 267 P.3d at 776. Thus, the duty on which the claim was based existed outside of the insurer's relationship with the ERISA plan. *Id.*

Morrison contends that his case is analogous to *Munda* because HPN contracted with its providers in its independent role as insurer, not in its special capacity as an MA organization. All of its insureds were directed to use its providers, whether they were under a Medicare plan or not. However, Morrison's argument fails because ERISA and Medicare are fundamentally different programs and cannot be analyzed in the same way. Unlike ERISA, the Medicare Act has established standards that regulate an MA organization's selection of providers and implementation of a quality assurance regime. No state law may intercede in that regime. The ERISA program does not have analogous standards regulating the insurers for quality assurance.

## CONCLUSION

The Medicare preemption provision contained in 42 U.S.C. § 1395w-26(b)(3) is very broad, and we have previously determined that it applies beyond those state laws that are simply inconsistent with the express standards set out in the Medicare Act: it preempts all state standards to the extent that they would regulate MA plans, other than laws and regulations related to licensing and plan solvency, including those established through case law. *Rogers*, 127 Nev. at ___, 266 P.3d at 601. Morrison's state law negligence claim would seek to regulate how contracted providers for MA plans are monitored, and thus, Morrison's claim is expressly preempted by 42 U.S.C. § 1395w-26(b)(3). And Morrison's arguments on appeal do not provide any basis for finding that his claims fall outside of the Medicare preemption provision. Accordingly,

SUPREME COURT
OF
NEVADA

(O) 1947A

15

for the reasons set forth in this opinion, we affirm the district court's order dismissing Morrison's state common law negligence action.

_____, J.
Hardesty

We concur:

_____, J.
Pickering

_____, J.
Douglas

_____, J.
Saitta

SUPREME COURT
OF
NEVADA

(O) 1947A

CHERRY, J., with whom GIBBONS, C.J., agrees, dissenting:

Today the majority holds that federal statutes and regulations preempt a Medicare recipient's claim against his Medicare Advantage organization for negligently selecting and retaining a contracted provider who infected the Medicare recipient with hepatitis C. It does so for two reasons: (1) Medicare regulations already set forth standards covering Medicare Advantage organizations' selection of contracted providers; and (2) any state tort law imposing a duty of care in selecting contracted providers would constitute a state law "with respect to" Medicare plans, which is expressly preempted under 42 U.S.C. § 1395w-26(b)(3). I respectfully dissent because I disagree with both rationales.

*Medicare Advantage*

As explained by the majority, Medicare Part C created the Medicare Advantage program, whereby health insurance organizations may contract with Medicare to provide federally subsidized health plans to Medicare enrollees. Medicare's regulatory agency, CMS, refers to these health insurance organizations (which can be health maintenance organizations, preferred provider organizations, religious fraternal benefit plans, or other organizations) as Medicare Advantage (MA) organizations.

MA organizations can be private entities that also offer health plans apart from the Medicare plans. MA organizations operate just as any non-Medicare health insurance organization would operate. For example, MA HMOs, like non-Medicare HMOs, contract with a network of providers to provide medical services. Health Plan of Nevada (HPN) is an HMO that also offers a Medicare Advantage plan.

CMS comprehensively regulates the MA plans offered by MA organizations. It approves the MA organizations' advertising materials,

the providers with whom the organizations contract, and the terms of those contracts. It requires that MA organizations implement quality improvement programs. And it also requires that MA organizations establish grievance procedures, which enrollees may use to complain about the services offered by an MA organization and its providers.

*Negligent selection claims*

As an HMO, HPN contracted with and directed its insureds to a particular provider that, appellant Louis Morrison asserts, HPN knew or should have known was dangerous and unsafe. Morrison's claim against HPN for negligent selection and retention of a contracted provider is not a novel claim.[1] The following analysis of negligent selection claims will provide a useful background for preemption analysis.

Negligent selection and retention claims are based on the theory that, when an HMO holds out a physician as competent by making that physician a contracted provider, the HMO's failure to investigate the physician's skill and qualifications creates a foreseeable and unreasonable risk of harm to patients.

An HMO's duty of care in selecting and retaining contracted providers evolved out of the hospital context, where hospitals must determine which physicians may practice at their facilities. *See* Barry R.

---

[1]The majority states that "Morrison's claim was not one of negligent selection, but rather, was based on HPN's failure to monitor." Majority opinion *ante* at 11. But the second amended complaint alleges that "Defendants owed a duty to Plaintiff . . . to use reasonable care to select its health care providers" and that "Defendants breached this duty by failing to direct the Plaintiff to seek medical care at reasonably safe facilities." In these statements Morrison clearly alleges the duty and breach elements of a negligent selection claim.

Furrow, *Managed Care Organizations and Patient Injury: Rethinking Liability*, 31 Ga. L. Rev. 419, 457, 461-62 (1997). Courts have held that "the failure to investigate a medical staff applicant's qualifications for the privileges requested gives rise to a foreseeable risk of unreasonable harm and . . . a hospital has a duty to exercise due care in the selection of its medical staff." *Johnson v. Misericordia Cmty. Hosp.*, 301 N.W. 2d 156, 164 (Wis. 1981). In *Moore v. Board of Trustees of Carson-Tahoe Hospital*, 88 Nev. 207, 495 P.2d 605 (1972), this court recognized both the changing role of the hospital and the concept of a hospital's "corporate responsibility for the quality of medical care." *Id.* at 211-12, 495 P.2d at 608.

The Missouri Court of Appeals in *Harrell v. Total Health Care, Inc.*, No. WD 39809, 1989 WL 153066, at *4-5 (Mo. Ct. App. Apr. 25, 1989), *affirmed*, 781 S.W.2d 58 (Mo. 1989), determined that HMOs have assumed a role sufficiently similar to that of a hospital to justify extending liability to HMOs. In that case, the court agreed with arguments that HMOs owe a duty of care to properly vet their contracted providers. The court reasoned that, in order for patients to realize the benefit of their health insurance, they must be treated by physicians approved by their plan. *Id.* at *5. In this arrangement "there is an unreasonable risk of harm to subscribers if the physicians listed . . . include doctors who are unqualified or incompetent." *Id.* The court held that the presence of this risk gives rise to a duty owed by the insurance company to ensure that contracted physicians are qualified and competent. *Id.*

Other courts have since upheld a plaintiff's ability to bring a negligent selection claim against an HMO. *See Petrovich v. Share Health Plan of Ill., Inc.*, 696 N.E.2d 356, 360-61 (Ill. App. Ct. 1998) (holding that HMOs can be liable for "corporate negligence as a result of negligent

selection and control of the physician who rendered care"); *McClellan v. Health Maint. Org. of Pa.*, 604 A.2d 1053, 1059 (Pa. Super. Ct. 1992) ("HMOs have a non-delegable duty to select and retain only competent primary care physicians."). Some courts have also found that HMOs owe a duty of care in selecting contracted providers under the Restatement (Second) of Torts § 323 (1965), which states that

> [o]ne who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of the other's person or things, is subject to liability to the other for physical harm resulting from his failure to exercise reasonable care to perform his undertaking, if (a) his failure to exercise such care increases the risk of such harm, or (b) the harm is suffered because of the other's reliance upon the undertaking.

*See, e.g.*, *McClellan*, 604 A.2d at 1059.

In this case, HPN is a Nevada-licensed HMO that selects and contracts with medical providers. Morrison should not be prevented from enforcing the duty of care that HPN may owe to him simply because Morrison is a Medicare recipient, while HPN's non-Medicare customers may do so. As explained below, no such unequal treatment is created by the Medicare Act's preemption clause.

*Preemption*

"When a federal act contains an express preemption provision, this court's primary task is to 'identify the domain expressly pre-empted by that language.'" *Pacificare of Nev., Inc. v. Rogers*, 127 Nev. \_\_\_, \_\_\_, 266 P.3d 596, 600 (2011) (quoting *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 484 (1996)). Under the Medicare Act, the standards established by the federal Medicare statutes and regulations "supersede any state law . . . with respect to MA plans which are offered by MA organizations,"

except for licensing and solvency requirements. 42 U.S.C. § 1395w-26(b)(3) (2012); 42 C.F.R. § 422.402 (2013). Thus, to determine whether the domain is expressly preempted, one must consider (1) if there are federal standards superseding state negligent selection and retention law and (2) if negligent selection claims may result in laws "with respect to" MA plans.

*Federal standards*

The majority states that "[a]lthough CMS does not directly select the physicians . . . federal regulations require an MA organization to select and retain only those providers that meet the qualifications specified in the Medicare Act." Majority opinion *ante* at 5. The majority goes on to list several federal regulations that the majority contends preempt negligent selection claims. It reasons that such claims, although not necessarily inconsistent with the federal standards, "could result in the imposition of additional state law requirements on the quality assurance regime regulated by CMS." *Id.* at 10-11. I do not believe that those regulations create standards regulating the negligent selection of providers.

The majority first points to 42 C.F.R. § 422.4(a)(1)(i), which states that an MA organization's "network [of providers] is approved by CMS to ensure that all applicable requirements are met, including access and availability, service area, and quality." Nevertheless, the fact that CMS approves of a provider's inclusion in the network does not mean that negligent selection claims against the MA organization are preempted. For instance, 42 C.F.R. §§ 416.1-200 creates standards regulating certain providers, but the existence of those standards does not make the providers immune to negligence suits. In fact, Medicare regulations specifically acknowledge that a Medicare provider may be sued for

malpractice. 42 C.F.R. § 424.530(a)(3)(i)(C) (2013) (stating that CMS may deny a provider's Medicare reenrollment if the provider is convicted of "[a]ny felony that placed the Medicare program or its beneficiaries at immediate risk (such as a malpractice suit that results in a conviction of criminal neglect or misconduct)"). Just as CMS's provider standards do not preempt providers' malpractice liability, CMS's approval of an MA organization's provider selection does not preempt MA organizations' negligence liability.

The majority then considers 42 C.F.R. § 422.204(a), which states that "[a]n MA organization must have written policies and procedures for the selection and evaluation of providers. These policies must conform with the credential and recredentialing requirements set forth in paragraph (b) of this section and with the antidiscrimination provisions set forth in § 422.205." But the existence of minimum requirements for participation in Medicare Advantage does not preempt MA organizations' tort liability. Despite the existence of minimum procedural requirements, it is still the MA organization that "select[s] the practitioners that participate in its plan provider networks." 42 C.F.R. § 422.205(a) (2013). It is that discretionary selection that Morrison alleges HPN negligently performed—a selection that an HMO such as HPN may also make in a non-Medicare capacity.

Finally, the majority refers to the quality improvement program that CMS requires MA organizations to implement. *See* 42 C.F.R. 422.152(a) (2013). I agree that this program might preempt Nevada's quality assurance standards, established by NRS 695G.180. And CMS's interpretation of its regulations says that states may not set forth ongoing quality assurance requirements. *Medicare Managed Care*

*Manual*, ch. 10, § 30.1 (Nov. 4, 2011). Yet CMS states in the same text that "[o]ther State health and safety standards, or generally applicable standards, that are not specific to health plans are not preempted." *Id.* § 30.2. A general duty of care is just such a generally applicable standard.[2]

Thus, each federal standard cited by the majority fails to touch on the generally applicable negligence claim at issue here. In addition, any concern that tort liability may indirectly increase costs to MA organizations, thereby impacting their ability to comply with regulations, is irrelevant. The Supreme Court of the United States has stated, in the ERISA context, that state laws that are otherwise not preempted and that "affect only indirectly the relative prices of insurance policies, a result no different from myriad state laws in areas traditionally subject to local regulation," are not preempted. *N.Y. State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.*, 514 U.S. 645, 668 (1995). The same logic applies to this case.

*"With respect to"*

Even if federal regulations provided standards governing the negligent selection of providers, it is not clear that negligent selection

---

[2]The majority argues that we do not distinguish conduct violating quality assurance requirements from conduct that might violate a duty of care. The distinction is obvious. An insurance organization violates NRS 695G.180's quality assurance standards when it fails to establish the procedures and record-keeping that constitute a quality insurance program. An insurance organization breaches a general duty of care when it commits tortious acts against its customers. One set of conduct concerns procedures and paperwork; the other concerns actual negligent acts that cause injury.

liability creates state law "with respect to" MA plans. This court has interpreted similar language in the ERISA context. Under ERISA, all state laws that "relate to" certain employee benefit plans are expressly preempted. 29 U.S.C. § 1144(a) (2012). In *Munda v. Summerlin Life & Health Insurance Co.*, 127 Nev. ___, ___, 267 P.3d 771, 773 (2011), the appellants argued that federal ERISA regulations did not "relate to" their claim for negligence, which alleged that the respondent "failed to identify the unsafe practices of or terminate its contract with the" provider. This court agreed, stating that ERISA's express preemption provision "does not preempt claims that are brought against Summerlin in its capacity as [a managed care organization], instead of in its capacity as an ERISA plan administrator." *Id.* at ___, 267 P.3d at 776. I believe that this case is analogous.

Here, Morrison alleges that HPN committed negligence in its capacity as an HMO. In other words, Morrison alleges that HPN negligently selected an unsafe provider—an activity that an HMO may perform without any connection to Medicare Advantage. The fact that Medicare contracted to compensate HPN on behalf of Morrison does not change the fact that HPN, exercising the discretion afforded it under federal regulations, chose the provider.

The majority contends that *Munda* is distinguishable because, in that case, "the plaintiffs' claim was not preempted because they alleged facts to show that their insurer . . . was not acting in its capacity as an administrator of the ERISA plan when it selected and oversaw its providers, but rather, in its independent role as an insurer." Majority opinion *ante* at 14-15. Yet this case is identical: HPN functions as a Nevada-licensed HMO by contracting with providers for medical care,

SUPREME COURT
OF
NEVADA

(O) 1947A

regardless of whether Medicare is involved.[3] *See* NRS 695C.030(6), (7) ("'Health maintenance organization' means any person which provides or arranges for provision of a health care service or services and is responsible for the availability and accessibility of such service or services to its enrollees." "'Provider' means any physician, hospital or other person who is licensed or otherwise authorized in this state to furnish health care services."). It shouldn't matter whether HPN is compensated by Medicare, by the enrollee, or by other sources.

In sum, Medicare's standards do not cover general health and safety issues like negligence claims. Furthermore, under *Munda*, Morrison's claim for negligent selection of a provider is not "with respect to" Medicare and is therefore not expressly preempted. The Medicare

---

[3]The majority also argues that, "[u]nlike ERISA, the Medicare Act has established standards that regulate an MA organization's selection of providers." Majority opinion *ante* at 15. As stated above, I do not agree that there are standards governing the selection of providers. CMS regulations state that "an MA organization . . . select[s] the practitioners that participate in its plan provider networks," subject only to nondiscrimination rules and the satisfaction of procedural requirements. 42 C.F.R. § 422.205(a) (2013).

SUPREME COURT
OF
NEVADA

(O) 1947A

Act's text does not show that Congress intended the unequal result that Medicare enrollees cannot have legal recourse against a negligent HMO while non-Medicare patients may. Accordingly, I respectfully dissent.

                                          , J.
Cherry

I concur:

                                        , C.J.
Gibbons